# Lowe v. The State.

*Indictment for Keeping Gaming Table.*

1. *Testimony of witness on former prosecution.*—A prosecution for the violation of a municipal ordinance prohibiting the keeping of a gaming-table, in substance the same as the general statute (Code, § 4055), at which the defendant was found guilty, and also bound over to answer an indictment for the offense, and the subsequent prosecution by indictment, involve the same offense, so far as relates to the rule regulating the admissibility of the testimony of a witness on a former trial.

2. *Testimony of absent witness.*—The testimony of a witness on a former trial or prosecution of the defendant, for the same offense, is admissible as evidence against him on a second trial, if the witness is beyond the jurisdiction of the court, whether he has removed from the State permanently, or for an indefinite time.

3. *Admission implied from silence.*—The defendant being charged with keeping a gaming-table, having been arrested with several other persons who were playing a game with dice at his house ; a remark made by one of them to the police officers while going to the guardhouse, in an ordinary tone of voice, implicating the defendant in the offense, and to which he made no reply, though he was within five or six feet of the speaker, is admissible evidence against him as an implied admission.

FROM the City Court of Montgomery.

Tried before the Hon. THOS. M. ARRINGTON.

The defendant in this case was indicted for keeping a

gaming-table. On the trial, as the bill of exceptions shows, it appeared that the defendant and ten or twelve other persons were arrested, one night in October, 1888, at his house, by several police officers of the city of Montgomery, who found the party engaged in playing *craps*, on a blanket spread on the floor ; and were carried to police head-quarters. Ivey Taylor, one of the police officers, testified on the part of the prosecution, that while the prisoners were being carried to the guard-house, walking in couples, Frank Lake, one of them, "stated to him that each of the players paid the defendant 25 cents for the privilege of playing at said game in his house ; that this remark was made in an ordinary tone of voice ; that the defendant could not have been more than five or six feet in the rear at the time, and that he made no reply." The defendant objected to the admission of this remark as evidence, "because it was not shown to have been made in his presence and hearing, and because it was not made under such circumstances as would ordinarily call forth a reply ;" and he excepted to the overruling of his objections. Afterwards, the defendant, testifying as a witness for himself, stated that he did not hear the remark of said Lake, and denied that the players paid him anything for the use of his room ; and he again moved to exclude the testimony, and excepted to the overruling of his motion and objection.

It appeared, also, that the defendant, on the day after his said arrest, was charged in the Recorder's Court of the city of Montgomery with a violation of section 600 of the City Code (which declares a fine of not more than $100, against any person "who keeps a gambling saloon, or house for gaming, or who keeps or has in his possession any table, cloth, box or other device, used for the purpose of gaming") ; that he was found guilty, and fined $100 ; and that the City Recorder, acting *ex officio* as justice of the peace, bound him over to answer any indictment that might be found against him "for the offense of keeping a gaming-table." The State proposed to prove that, on the prosecution in the Recorder's Court, one Jake Munter was examined as a witness, and was cross-examined by the defendant ; and that said Munter then testified, "in substance, that he and the other players, on the night of the arrest, each paid the defendant 25 cents to defray expenses, and that on several previous occasions, within six months, he had played said game of craps for money at defendant's said house, with two or three other persons, each of them paying him 25 cents to defray expenses." It

[Lowe v. The State.]

was shown that said Munter was out of the State, having gone to Washington Territory about two weeks before the trial. A witness for the State, who saw him as he was about leaving on the railroad, testified that Munter then said, "he was going to Washington Territory, and never intended to return;" while another witness saw him in Birmingham the next day, "where he bought a ticket for Kansas City, and left on the train;" and M. Munter, his father, testified that he had received a letter from him in Washington Territory, and that "his said son told him (witness), when he left, that he intended to return to Alabama." The defendant objected to the admission of the evidence as to the testimony of Munter, "because it was illegal and irrelevant; and because it was given in a cause which was not between the same parties, nor in reference to the same cause; and because it was not shown that said witness had permanently left the State." The court overruled the objections, and admitted the evidence; to which the defendant duly excepted.

J. GINDRAT WINTER, for appellant.—(1.) The evidence as to the testimony of Munter ought not to have been admitted. That the testimony of an absent witness, given on a former trial, is not admissible, see *Finn v. Com.*, 5 Rand. 701; *Sullivan v. State*, 6 Texas Ap. 319; 10 Gratt. 722; *Collins v. Com.*, 12 Bush, Ky. 277; *Wilbur v. Seldon*, 6 Cowen, 161; 7 Nev. 174; 12 Wend. 45. If such evidence is admissible at all, it should be confined to cases of permanent absence; and here the evidence shows an intention to return, or is at least doubtful. The evidence, if admissible at all, must be confined to cases where there is identity of parties and of subject-matter; neither of which exists here. (2.) The objections to the testimony as to the remark of Lake were well taken.—*Lawson & Swinney v. State*, 20 Ala. 65; *Watson v. Byers*, 6 Ala. 393; *Wheat v. Croom*, 7 Ala. 349; *Jenks v. McRae*, 25 Ala. 440; *Spencer v. State*, 20 Ala. 27; *Abercrombie v. Allen*, 29 Ala. 281; *Fuller v. Dean*, 31 Ala. 657; *Glawson v. Wiley*, 35 Ala. 329; *Campbell v. State*, 55 Ala. 81; *Williams v. State*, 81 Ala. 1; 126 Mass. 519; 35 Miss. 317; 1 Greenl. Ev., § 192.

THOS. N. McCLELLAN, Attorney-General, *contra.*—(1.) As to the admissibility of the testimony of an absent witness, given on a former trial, while the authorities in other States

4

[Lowe v. The State.]

are conflicting, the following cases affirm its admissibility :
*Sullivan v. State*, 6 Tex. App. 319 ; *People v. Devine*,
46 Cal. 45 ; *Harley v. State*, 29 Ark. 17 ; *Shackleford v.
State*, 13 Ark. 543 ; *Dayton v. Wells*, 1 Nott & McC. 409 ;
*Rex v. Hogg*, 6 Car. & P. 176 ; 2 Hawk. P. C. 46, § 20.
The rule in Alabama has been settled in *Marler v. State*,
67 Ala. 62 ; *Long v. Davis*, 18 Ala. 801 ; *Mims v. Sturde-
vant*, 36 Ala. 636.   As to the admissibility of such evidence
in civil cases, see, also, *Magill v. Kauffman*, 8 Amer. Dec.
713 ; *Carpenter v. Groff*, 5 Ser. & R. 152 ; *Noble v.
Martin*, 7 Mart. 282 ; *Howard v. Patrick*, 38 Mich. 795.
As to the admissibility of such evidence, there can be no
difference, in reason or principle, between civil and criminal
cases, unless it is effected by the constitutional provision
which secures to the accused, in all criminal prosecutions,
the right to be confronted by the witnesses against him.
But this provision equally applies to the former testimony
of a witness who has since died, or become insane ; in which
cases, such evidence is admitted, on the ground that the
constitutional right was enjoyed at the former examination.
The evidence is admitted on the ground of necessity to pre-
vent a failure of justice, and the same necessity exists in the
case of a witness who is permanently absent.   There is, of
course, a possibility that he may return at some indefinite
future time ; but there is, also, a possibility that an insane
person may recover his reason, or that the proof of death
may be fabricated ; and the court must act, in each case, on
the evidence adduced and reasonable presumptions.   (2.)  As
to the identity of the two prosecutions, see *Harris v. State*,
73 Ala. 495.   (3.)  As to the admissibility of the evidence
of Lake, on the ground of an implied admission arising from
the defendant's silence, see *Williams v. State*, 81 Ala. 1 ;
*Wesley v. State*, 52 Ala. 182 ; *Smith v. State*, 52 Ala. 407;
*Blount v. State*, 49 Ala. 381.

SOMERVILLE, J.—The defendant is charged with the
offense of keeping or exhibiting a gaming-table for gaming,
contrary to the provisions of the statute.

It was proposed by the State to introduce secondary
evidence of what had been sworn to by one Jake Munter, an
absent witness, who had testified in a former prosecution
pending against the defendant, before the Recorder of the
city of Montgomery, for violation of a municipal ordinance
prohibiting the keeping of a gaming saloon, or house for

[Lowe v. The State.]

gaming, or table, or other device used for gaming. The evidence, in our opinion, clearly proves that Munter, the absent witness, had gone, about two weeks previously, to the State of Kansas, or to Washington Territory, being thus out of the State of Alabama at the time of the trial, and beyond the jurisdiction and process of the State courts. We are satisfied further, that his absence was for an indefinite period, if it was not presumptively permanent.

The Recorder being clothed by statute with not only jurisdiction of violations of the City ordinances, but also with "all the powers and authority that belong to justices of the peace in criminal matters, by the laws of this State," he was invested with the full jurisdiction of a justice as a committing magistrate.—Acts 1886-87, p. 496, § 2. The act of keeping a gaming-table, being a violation of both the municipal and State laws, the Recorder may be regarded not only as sitting as judge of the municipal court, and investigating the alleged violation of the city ordinance, but also incidentally as a committing magistrate, with power to bind the defendant over to answer for the same offense in the State courts. The procedure, therefore, before the Recorder's court, and the present prosecution, are for substantially, if not identically the same offense; and if there be no other valid objection to the testimony of Munter, than the fact of its rendition before the Recorder, we must hold it admissible.—*Harris v. The State*, 73 Ala. 495; Wharton's Crim. Ev. (8th Ed.), § 227.

The main objection urged to the admissibility of this witness' testimony is, that, this being a criminal prosecution, the defendant generally has the right to be confronted by his witnesses, and secondary evidence of what an absent witness swore to on a former prosecution is not admissible, unless it is clearly proved that he had permanently removed from the State. Where the witness is *deceased*, the authorities hold, in uniform accord, that his testimony upon a second trial is admissible. In *Horton v. State*, 53 Ala. 488, such testimony taken before a committing magistrate was admitted on a trial of the same cause in the Circuit Court, the witness being satisfactorily proved to be dead, following a like ruling in *Davis v. State*, 17 Ala. 354. The basis of the rule is the necessity of the case, to prevent the defeat of justice; the constitutional objection being obviated by the fact, that the defendant has already had the opportunity to confront and cross-examine the witness, in the

prior procedure involving the same issue.—*Marler's case,*
67 Ala. 55; *Summons v. State,* 5 Ohio St. 324. In *Marler
v. State,* 67 Ala. 55; s. c. 42 Amer. Rep. 95, on a trial for a fel-
ony, the testimony given on the former trial by a witness
who had since become *insane,* was allowed to be introduced
in evidence, the necessity and reason of the case being
regarded the same as if he were dead. The authorities are
fully reviewed in that decision, and the true reason upon
which they are based stated to be the necessity of prevent-
ing the miscarriage of justice; which applies with equal
force to a witness who is shown to be absent from the State
for an indefinite time, so that he can not be reached by the
process of the court at the time of the trial. We can see
no difference between the two cases in principle, nor in the
reasons alleged, why the rule should not be applied as well
to criminal as to civil cases. It is possible, it is true, that
the absent witness may return at some day in the future,
just as it is possible that an insane man may be restored to
his reason; but the courts can not be expected to delay the
administration of justice, waiting for the happening of so
indefinite a contingency. Mr. Greenleaf says, that such
testimony may be received, "if the witness, though not
dead, *is out of the jurisdiction,* or can not be found after
diligent search, or is insane, or sick, and unable to testify,
or has been summoned, but appears to have been kept away
by the adverse party."—1 Greenl. Ev. (14th Ed.), § 163.
It is observed in a note to this section, that "if the witness
has gone, no one knows whither, and his place of abode can
not be ascertained by diligent inquiry, the case can hardly
be distinguished in principle from that of his death; and it
would seem that his former testimony ought to be admitted."

The following language is used on this subject by Mr.
Starkie: "It is an incontrovertible rule, that when the wit-
ness may be produced, his deposition can not be read, for it
is not the best evidence. But the deposition of the witness
may be read, not only when it appears that the witness is
actually dead, but in all cases where he is *dead for all pur-
poses of evidence;* as where diligent search has been made
for him, and he can not be found; where he resides in a
place beyond the jurisdiction of the court; or where he has
become lunatic, or attainted."—1 Starkie Ev. *409-*410.

In *Long v. Davis,* 18 Ala. 801, such testimony of a non-
resident witness was allowed in a civil case; and in many of
the American States its admissibility has been confined to

[Lowe v. The State.]

cases of this character. In England, the practice on this
point, in criminal cases, does not seem to have been uni-
form, the general rule, however, being not to admit the dep-
osition, or secondary evidence of any witness, while any rea-
sonable hope remained that the witness would be able to
attend on some future occasion.—1 Starkie Ev. (Shars-
wood's Ed.), * 411, note y. The more recent decisions
in this country, however, support the contrary view;
and they seem to us to better comport with both reason and
analogy, as well as to more efficiently promote the conve-
nient administration of justice. It is the settled rule, that
when the subscribing witness to an instrument is out of the
State, his handwriting may be proved, whether in a civil or
criminal proceeding. The party in this case has already
cross-examined the witness after being sworn, or has had the
opportunity to do so. And it may be added that, under our
statute, defendants can take the deposition of such absent
witness, even in a criminal case, if they so elect; which
obviates any supposed injustice arising from the admission
of such testimony as to them.—Crim. Code (1886), § 4465.

The following authorities are directly in point on this
question in criminal cases: *Sullivan v. State*, 6 Tex. Ct.
App. 319; s. c., 32 Amer. Rep. 581; *People v. Devine*, 46
Cal. 45; *Shackelford v. State*, 33 Ark. 539; *Hurley v. State*,
29 *Ib.* 17; 1 Greenl. Ev. (14th Ed.), § 163, *notes* 1 and (a),
and cases cited. And the following in civil cases: *Magill
v. Kauffman*, 4 Serg. & R. 317; s. c., 8 Amer. Dec. 713;
*Howard v. Patrick*, 38 Mich. 33; *Carpenter v. Groff*,
5 Serg. & R. 162; *Long v. Davis*, 18 Ala. 801, *supra*.

The reasoning and *dicta* in the following cases, of ab-
sent, deceased, insane and sick witnesses, support the same
view: *Drayton v. Wells*, 1 Nott & McC. 409; s. c., 9 Amer.
Dec. 719; *Reynolds v. United States*, 98 U. S. 145; *Taylor
v. City of Burlington*, 47 Iowa, 300; *Summons v. State*,
5 Ohio St. 325; *Marler v. State, supra*; *Rex v. Hogg*, 6 C.
& P. 176; *Emig v. Diehl*, 76 Penn. St. 359; *Miller v. Rus-
sell*, 7 Mart. (La.) 266.

The testimony of Munter, taken before the Recorder, in
our opinion, was properly admitted in evidence.

The statement of Lake, to the witness Taylor, was made
in an ordinary tone of voice, near enough to have been
heard by the defendant, and it so far implicated the defend-
ant in the offense charged as to have naturally called for a
denial, had he heard it. It was therefore properly admitted

[Chappell v. The State.]

in evidence. The weakness of such testimony is no argument against its admissibility, although the rule requires it to be received with all proper caution.—*Williams v. State*, 81 Ala. 1; s. c., 9 Crim. Law. Mag. (1887), 480.

We discover no error in the record, and the judgment is affirmed.

