# Thompson *et al.* v. The State.

## *Indictment for Conspiracy to Rob.*

1. *Conspiracy to rob; sufficiency of indictment.*—An indictment which charges that the defendants "conspired together to unlawfully take one thousand dollars in money, the property of J. H., from his person and against his will, by violence to his person, or by putting him in such fear as unwillingly to part with the same," is sufficient as an indictment for conspiracy to rob, and is not demurrable.

2. *Absent witness; admissibility of testimony on preliminary examination.*—The testimony of a witness who was examined on a preliminary investigation before a committing magistrate, an opportunity for cross-examination of the witness having been afforded the accused, is admissible as evidence on a subsequent trial, on proof that the witness is absent from the State, either permanently or for such a length of time that his return is merely contingent or conjectural; but where the absent witness was a minor, who lived with his father in the county in which the trial was had, and his absence in another State was for a temporary purpose, and with the avowed intention to return to the trial, although he had not been summoned as a witness, the fact that he had said to another, two days before trial, that he had employment and intended to remain in the other State, is not sufficient proof to render admissible the testimony of such witness on the preliminary examination; it not being shown that the witness had permanently abandoned his home in this State, and that the time of his return was contingent or conjectural.

3. *Same; testimony not inadmissible because not reduced to writing.*—Where the testimony of an absent witness who was examined on a preliminary investigation is otherwise admissible in evidence, the

[Thompson *et al.* v. The State.]

fact that on the preliminary hearing the magistrate failed to reduce his testimony to writing, as required by the statute, does not render such testimony inadmissible; nor does the fact that the magistrate, who was being examined as a witness, could not repeat the precise words of the witness render the evidence inadmissible; the substance of what the witness had testified to formerly being all that is necessary.

4. *Conspiracy; when offense complete.*—A conspiracy is in and of itself a distinct and substantive offense, and is complete when the vicious, unlawful combination and corrupt and corrupting agreement is entered into, and it is not a necessary ingredient of the crime, that any act should be done in pursuance of the agreement; and the fact that subsequent events may render the consummation of the crime impossible, or that the conspirators are entrapped in its consummation and are unable to carry the agreement into execution, is no defense and does not justify an acquittal.

5. *Same; indictable offense to form a conspiracy in this State to commit a felony in another State.*—A conspiracy, entered into in this State, to commit a known common law felony, *malum in se*, in another State being an indictable common law misdemeanor, is an indictable and punishable misdemeanor in this State.

6. *Conspiracy to rob; what necessary to authorize conviction.*—Where defendants are tried under an indictment charging them with a conspiracy to rob, to authorize a conviction the evidence must satisfy the jury beyond a reasonable doubt, not that any act was done or attempted in the consummation of the robbery, but that there was a corrupt agreement to rob entered into between the defendants; and a charge which instructs the jury that if they "can account for defendants going to the house" where the robbery was to be committed, "or for the agreement under which they went, on any other reasonable hypothesis other than the guilt of the defendants, or consistent with their innocence, it is the duty of the jury to do so, and acquit the defendants," is erroneous and properly refused, because the jury might have believed that the defendants were lawfully at said house, and yet have been satisfied beyond a reasonable doubt from all the evidence in the case, that they were guilty of the conspiracy to rob.

7. *Same; not necessary to prove amount intended to be acquired by the robbery.*—The averments of an indictment which are not descriptive of the fact or character of the offense, are not required to be proved with precision; and, on a trial under an indictment for a conspiracy to rob, which avers that the conspiracy was to rob a certain named person of a specified amount of money, it is not necessary to prove the precise sum it was averred it was intended to acquire by the robbery; such averment not being descriptive of the fact or character of the offense of conspiracy, but mere matter of evidence.

8. *Charge to the jury; what necessary to authorize charges to be given.* Instructions which are requested to be given to the jury must be clear, precise statements of the law, applicable to the evidence of the

[Thompson *et al.* v. The State.]

particular case; must be free from involvement or obscurity, and of all tendency to mislead or confuse the jury, and must not be invasive of the province of the jury or argumentative; and if subject to any of these objections, there is no revisable error in a trial court refusing them.

9. *Same; reasonable doubt.*—An instruction to the jury that "a doubt to acquit defendant must be a reasonable doubt; not mere speculation or possibility; that the State is not required to prove defendant's guilt beyond all doubt, but beyond all reasonable doubt," is a clear and precise statement of the law, and is free from error.

10. *Same; invasive of the province of the jury.*—Where, in a criminal prosecution the defense of an *alibi* is interposed and evidence is introduced tending to sustain it, a charge which instructs the jury that if they believe the testimony of certain witnesses as to the whereabouts of the defendant at the time of the commission of the alleged offense, they must find the defendant not guilty, is erroneous and properly refused, because it gives undue prominence to the evidence of the witnesses named in the charge, and is invasive of the province of the jury.

11. *Same; time and place of offense material inquiries.*—The time and place of an alleged offense are material inquiries in a criminal trial, and the burden rests upon the State to prove that the offense charged was committed within the county in which the *venue* is laid; and within the time to avoid the bar of the statute of limitations; and a charge which instructs the jury that the time and place of an alleged offense become material inquiry only when an *alibi* was interposed as a defense, is misleading and should be refused.

12. *Same; same; burden of proof.*—Where an indictment charges an offense to have been committed in a certain county, and within twelve months prior to the finding of the indictment, the burden is upon the State to prove that the offense was committed in the county named, within the time charged; but there is no burden resting upon the State to prove that the offense was committed at a particular time as specified by one of its witnesses; and charges so instructing the jury are misleading and should be refused.

13. *Charge to the jury; invasive of the jury's province.*—A charge which instructs the jury that they should consider the testimony of a certain witness on preliminary examination of the accused with extreme caution, "coming to them as it does by witnesses who can't remember all his testimony; that the same is not in writing, and the recollection of the witness is not distinct as to a great deal of his testimony," is properly refused, because it assumes as a fact that which it was the duty of the jury to ascertain and determine, and is also argumentative.

APPEAL from the Circuit Court of Henry.

Tried before the Hon. JOHN R. TYSON.

The appellants, Robert Thompson and Napoleon

[Thompson *et al.* v. The State.]

Thompson, were jointly indicted for a conspiracy to rob, and were tried and convicted and fined two hundred dollars, each.

The two counts of the indictment are copied in the opinion.. The State elected to prosecute for the offense charged in the first count of the indictment. To this count of the indictment, the defendant demurred upon the following grounds : 1st. Because it fails to allege the character of the money of which the defendants conspired to rob Hudspeth, or that the money had any value. 2d. That no intent was alleged, nor was the same alleged to have been unlawfully done. 3d. That the indictment was defective as a common law indictment, and fails to conform to the statutory form, in charging the offense of conspiracy to rob. This demurrer was overruled, and the defendants duly excepted.

One Dykes, a witness for the State, was absent. Said Dykes had been examined on the preliminary trial of the defendants, and the State offered to prove by the justice of the peace, before whom the preliminary trial was had, what the said Dykes testified to on said trial. The evidence introduced by the State showing the absence of the witness Dykes is sufficiently stated in the opinion. The defendants objected to the justice of the peace testifying to what the witness Dykes had testified to on the preliminary trial on the grounds that said Dykes had not been shown to be beyond the jurisdiction of the court, and that the defendants had a right to be confronted by the witness againt them. The court overruled this motion, and the defendants duly excepted. The substance of the testimony of the witness Dykes upon the preliminary hearing, as testified to by the justice of the peace, tended to show that the defendants, together with said Dykes, conspired in Henry county, Alabama, to go to the house of Hudspeth, who lived in Georgia, for the purpose of robbing him, and that in compliance with such conspiracy, they did go to said house, but for certain reasons the robbery was not committed ; and that Dykes told of this conspiracy to certain other persons. The testimony of the persons to whom Dykes told this conspiracy tended to corroborate the testimony of Dykes. There was also other evidence introduced on the trial tending to show that the

defendants were guilty of the conspiracy as charged in the indictment.

The testimony of W. M. Espy, J. R. Baker, Lonetta Smith, Frank Smith, Mrs. P. A. Thompson and Mrs. Satcher, witnesses for the defendants, tended to establish an *alibi* as to each of the defendants, by showing that at the time and place at which Dykes testified the defendants were when the conspiracy was entered into, the said defendants were elsewhere—the testimony of each of the witnesses specifying the particular places at which the defendants were, respectively.

Upon the introduction of all the evidence, the court in its general charge to the jury instructed them, among other things, as follows : "A doubt to acquit defendants or either of them, must be a reasonable doubt; not a mere speculation or possibility. The State is not required to prove defendants' guilt beyond all doubt, but beyond all reasonable doubt." The defendant duly excepted to this portion of the court's general charge, and also separately excepted to the court's refusal to give each of the following charges requested by them : (1.) "If the jury believe the testimony of W. M. Espy and J. R. Baker as to the whereabouts of the defendant, Napoleon Thompson, at the time of the alleged offense, they will find the defendants not guilty as charged." (2.) "The time and place of the alleged offense is a material inquiry in this case after the *alibi* is set up." (3.) "If there was an agreement entered into by and between Hudspeth, Maund, Holland and Deal to have the defendants to come to Hudspeth's house on the night that it is said they went, and it was the purpose of Hudspeth and these parties to entrap these defendants, then there could not be a robbery, and hence the defendants in this case could not be convicted." (4.) "The jury should consider the testimony of Bob Dykes with extreme caution coming to them as it does by witnesses who can't remember all his testimony, that the same is not in writing, and the recollection of the witnesses indistinct as to a great deal of his testimony." (5.) "This offense is charged to have been committed in Henry county, near the railroad, on the east side of town, on the Monday and Tuesday evening of the week of the defendants' arrest, the burden is on the State, and they must convince you of this fact to a moral certainty, or you should

[Thompson *et al.* v. The State.]

acquit.'' (6.) "If the jury believe from the evidence that the defendants have sustained their plea of *alibi* at the time of the alleged offense, then they can not be guilty, and the jury should acquit. And in determining this question, they should look at the testimony of W. M. Espy, J. R. Baker, Lonetta Smith, Frank Smith, Mrs. P. A. Thompson and Mrs. Satcher.'' (7.) "If the jury can account for defendants going to Hudspeth's house, or for the agreement under which they went on any other reasonable hypothesis, other than the guilt of the defendants, or consistent with their innocence, it is the duty of the jury to do so, and acquit the defendants.'' (8.) "If the State lay the place and time of the conspiracy at or near the railroad on the east side of town, and on Monday or Tuesday evening between one and two o'clock of the same week of the alleged going to Hudspeth's house, then the State must prove it by evidence sufficient to satisfy the jury beyond all reasonable doubt, or the jury should acquit.'' (9.) "Before the jury can convict, they must believe the testimony of Robert Dykes that they entered into the conspiracy, as alleged, on Monday or Tuesday evening, and at the time as elected by the State.'' (10.) "If the jury believe the evidence, they will find the defendants not guilty.''

R. H. WALKER, for appellant.—The court should have sustained the two grounds of demurrer to the first count of the indictment. The very gist of the offense of conspiracy is to unlawfully conspire with an intent to commit a crime. It is not only necessary to allege an intent, but it is incumbent on the State to prove the intent and that it was unlawful.—*People v. Earnest*, 51 Hun. 19, (20. N. Y.) ; 5 Gen. Dig. U. S. 1890, 389, § 3 ; § § 10, 11, 12, 20, 21 ; *Smith v. Nippet*, 44 N. W. Rep. 846 ; 7 Gen. Dig. U. S. 1892, 425, § 1, 4, *State v. Cawood*, 2 Stew. 360.

The third ground of the demurrer to the first count of the indictment was well taken. Said count fails to allege that it was unlawfully done, or that the conspiracy was formed with any unlawful intent ; and it does not conform to the statutory form, charging the offense with conspiracy to rob.—*Davis v. State*, 68 Ala. 58 ; *Nowlin v. State*, 49 Ala. 41 ; *Smith v. State*, 63 Ala. 55.

The court should not have admitted the testimony of

[Thompson *et al.* v. The State.]

the absent witness. There had been no sufficient predicate laid to allow the admission of such evidence.—
*Sylvester v. State*, 71 Ala. 17 ; *Lucas v. State*, 96 Ala. 51 ;
*Pruitt v. State*, 92 Ala. 41 ; Greenleaf Ev. (14th Ed.) §
163 and note; *Lowe v. State*, 86 Ala. 52; *South v. State*,
86 Ala, 617 ; *Perry v. State*, 87 Ala. 30.

The fourth charge requested by the defendant should
have been given.—*Harris v. State*, 73 Ala. 495 ; *Marler v.
State*, 67 Ala. 55; *Sylvester v. State*, 71 Ala. 17; *Grimes v.
State*, 63 Ala. 166. The seventh charge requested by
the defendants asserted a correct proposition, and should
have been given.—*Reeves v. State*, 95 Ala. 31.

WILLIAM C. FITTS, Attorney-General, for the State.—The
indictment was sufficient, and the demurrer was rightfully overruled.—Crim. Code, 269, Form No. 29.

The witness Dykes being, as the proof showed, indefinitely absent from the State of Alabama, and in the
State of Florida, it was proper to permit the witness,
Walker, who was the justice of the peace, to testify to
his evidence as delivered on a former trial.—*South v.
State*, 86 Ala. 617 ; *Perry v. State*, 87 Ala. 30 ; *Pruitt v.
State*, 92 Ala. 41.

The charges requested by the defendants were properly refused. The indictment does not charge that the
conspiracy was made at any particular time or any particular day, nor is the time a constitutent of the offense.
Therefore, the 8th and 9th charges were properly refused.—*Thompson v. State*, 25 Ala. 42.

BRICKELL, C. J.—The indictment contains two
counts ; the first charging that the defendants, "conspired together to unlawfully take one thousand dollars
in money, the property of Julius C. Hudspeth, from his
person, and against his will, by violence to his person,
or by putting him in such fear as unwillingly to part
with the same." The second count charged that the
defendants "unlawfully conspired together to unlawfully and with malice aforethought killed Julius C. Hudspeth." On the trial, the State voluntarily elected to
prosecute only for the offense charged in the first count,
thereby, for all the purposes of the trial, eliminating the
second count as effectually as if it had not formed part
of the indictment ; and it is the sufficiency of the first

count alone, which is now open for consideration. The offense, the commission of which is averred to have been the purpose of the conspiracy, is described in the count in the words of an indictment for robbery as prescribed by the Code, (Cr. Code, 276,Form 76); and in other respects, the count is in close analogy to the form prescribed for a conspiracy to murder.—Cr. Code, p. 269, Form 29. The statute prescribing forms of indictment, declares that the forms are sufficient in all cases to which they are applicable, and that in other cases analagous forms may be used.—Cr. Code, § 4899. The demurrers to the count were not well taken, and were properly overruled.—3 Brick. Dig. 279-80, §§ 447-49.

It is a very general rule, applicable alike in civil and criminal cases that if a witness has given testimony in the course of a judicial proceeding between the parties litigant, before a competent tribunal, subsequently dies; or if not dead becomes insane; or after diligent search is not to be found within the jurisdiction of the court; or if that which is equivalent be shown, that he has left the State permanently, or for such an indefinite time that his return is contingent and uncertain, it is admissible to prove the substance of the testimony he gave formerly.—1 Whart. Ev., §§ 177-80; 1 Green. Ev., §§ 163-66; 1 Brick. Dig. 878, §§ 1064-72; 3 Brick. Dig. 411, §§ 523-33; *Lowe v. State*, 86 Ala. 47; *South v. State*, *Ib.* 617; *Perry v. State*, 87 Ala. 30; *Pruitt v. State*, 92 Ala. 41; *Lucas v. State*, 96 Ala. 51. The rule is founded upon a principle of necessity, rather than upon any ideas of mere convenience. Parties should not lose the benefit of evidence, taken on a former trial when the same issues were involved, and there was full opportunity of examination and cross-examination, because events or contingencies have arisen which render the personal presence of the witness impossible, or if possible, his examination impracticable, or because the witness is without the jurisdiction of the court, and his personal presence can not be compelled. The rule is however exceptional, and it is essential to the admissibility of the evidence, that some one of the contingencies, which are deemed to create the necessity, be satisfactorily shown. In the present case, the fact which was supposed to authorize the introduction of the evidence given by the witness on the

[Thompson *et al.* v. The State.]

preliminary examination before the justice of the peace,
was his absence from the State at the time of the trial.
The evidence was without conflict, that the witness was
a minor, and his home was with his father in the county
in which the trial was had, and that when he left home
but a short time before the trial for the State of Florida,
it was avowedly for a mere temporary purpose, and with
the intent of returning to the term of the court at which
the trial was had. The opposing evidence is that of a
witness, who two days before the trial saw the witness in
Florida, and he declared that he had a job of work and
intended to remain, and was not coming to court. The
reasonable hypothesis the evidence supports, is not that
the witness had permanently abandoned, or intended a per-
manent abandonment of his home in this State; that his
absence was merely temporary; though the time of re-
turning is not shown affirmatively, it is not shown to
have been uncertain and contingent. There was no duty
resting upon the witness to return to that term of the
court, or to be present at the trial of the case. He had
not been summoned, nor was he under bond for appear-
ance, so far as is shown; nor had the State any reason
to expect his appearance or presence. We are not of
opinion, that an event or contingency was shown which
authorized the introduction of the evidence the witness
had given on the preliminary examination before the
justice of the peace. We deem it proper to say, that it
was not an objection to the admissibility of the evidence,
that the justice of the peace had not reduced to writing
the examination of the witness, as is required by the
statute. The neglect of the justice to perform this duty,
can not prejudice the parties, nor does it lessen or add
to the tests upon which the admissibility of the testi-
mony depends, nor was the evidence inadmissible be-
cause the magistrate could not, and did not assume to
repeat the precise words of the witness; all that was es-
sential, was, that he should remember and state the sub-
stance of what the witness had testified to formerly; the
substance of the examination by the State, and of the
cross-examination by the defendants.—*Gildersleeve v.
Caraway*, 10 Ala. 260; *Davis v. State*, 17 Ala. 354. We
may remark, that if on a succeeding trial, the witness
should be absent, and the introduction of his evidence on
the preliminary examination before the justice is deemed

material, its admissibility will depend on the state of facts then existing.

The instruction given by the court touching a reasonable doubt which requires an acquittal of a criminal charge, is clear and precise, and in accordance with all authority. Though an exception was reserved to it, in the argument of counsel here its correctness is not questioned.

Instructions requested must be clear, precise statements of the law applicable to the evidence; must be free from involvement or obscurity, of all tendency to mislead or confuse the jury, must not be invasive of the province of the jury, or argumentative. If subject to any one of these objections, there is no revisable error in refusing them.

The first instruction requested by the defendants, not only gives undue prominence to the evidence of the witnesses who were named in it, but was invasive of the province of the jury to consider the testimony of these witnesses in connection with all the evidence which had been introduced touching the facts to which they testified. The precise meaning or purpose of the second instruction, is not clear. Time and place are material inquiries on every criminal trial. The burden rests on the State to prove that the offense charged was committed within the county in which the *venue* is laid, and within a time to avoid the bar of the statute of limitations. The burden is not increased whatever may be the nature or character of the defense. It is not of consequence true, as a legal proposition, as this instruction asserts, or as it would probably have been by the jury construed to assert, that time and place became a material inquiry only when an *alibi* was interposed as a defense.

The third instruction is founded in a misconception of the offense charged, and is not in any of its postulates of fact well founded. A conspiracy is in and of itself a distinct, substantive offense; complete when the corrupt agreement is entered into; the agreement is the gist of the offense. It is not necessary that any act should be done in pursuance of the agreement; nor is the offense purged, because subsequent events may render the consummation of the agreement impossible, or because the conspirators are entrapped in an attempt at its consummation.

[Thompson *et al.* v. The State.]

The fourth instruction assumes as matter of fact, that which it was the province of the jury to ascertain and determine; that, to employ its own words, the recollection of the witnesses as to the testimony given by Dykes on the preliminary examination before the justice, was "indistinct as to a great deal of his testimony." Besides, in form and expression the instruction was a mere argument.

The fifth, eighth, and ninth instructions may be considered together, and each are subject to kindred objections. The indictment charges the offense to have been committed in Henry county, and includes the charge that the time of its commission was within twelve months prior to its finding. These were the facts, the State was under the burden of proving; there was no burden resting upon it, to prove that the conspiracy was formed at the time or place stated in the fifth and eighth instructions. These instructions confound the allegations of the indictment with the evidence which the State introduced. They are wanting in clearness and precision, and were calculated to mislead or confuse the jury. The ninth affirms that the State had elected to prosecute on the testimony of a particular witness; and of such election the record furnishes no evidence, unless it be inferred from the tendencies of the evidence the State introduced.

The sixth instruction is subject to the objection that it gives undue prominence to the testimony of particular witnesses.

The offense charged against the defendants was the conspiracy, not any act done or attempted in its consummation. Of the fact of the conspiracy, of the corrupt agreement, the evidence must have satisfied the jury beyond a reasonable doubt; and if the jury could reconcile all the criminating evidence on a reasonable hypothesis consistent with the innocence of the defendants, it was a duty to adopt that hypothesis. This is far from being the proposition asserted in the seventh instruction, which mingles the evidence touching the going to Hudspeth's house after the conspiracy was formed, and the evidence of the conspiracy, and then in the alternative, requires an acquittal, if the jury could account for the evidence of either, on a reasonable hypothesis consistent with the innocence of the defendants. It may be, the jury could account for the fact that the

defendants went to Hudspeth's house, on some reasonable hypothesis consistent with their innocence, and yet unable to reconcile all the criminating evidence touching the conspiracy, on any reasonable hypothesis consistent with innocence. Yet, framed as the instruction is, in that event, the jury would have been under the duty of acquittal. The only importance of the fact that the defendants went to Hudspeth's house, lies in its tendency to corroborate the evidence of the conspiracy. There is no aspect in which the instruction can be considered as correct, and it was properly refused.

It is insisted that the tenth instruction ought to have been given, because there is an absence of evidence to support the averment of the indictment, that the object or purpose of the conspiracy was to rob Hudspeth of one thousand dollars. An indictment for a conspiracy to do an act which is a well known felony or misdemeanor at common law is sufficient if it describes or avers in general terms the felony or misdeameanor intended to be committed. The nature of the offense by such averment or description is clearly indicated, and all beyond is mere matter of evidence, or surplusage.—1 Bish. Cr. Procedure, § 516; 4 Amer. & Eng. Encyc., 623; 3 Greenl. Ev., § 395; *Com. v. Eastman*, 1 Cushing, 189; s. c. 48 Am. Dec. 596. It was immaterial whether the purpose of the conspiracy was to rob Hudspeth of one dollar or of one thousand dollars. The degree of the guilt of the accused was not lessened or increased because of the insignificance or the magnitude of the value of that which it was intended to acquire by the robbery; and if this were an indictment for robbery, it would not be necessary to prove the precise sum averred to have been taken from the person of the party robbed.—3 Greenl. Ev., § 224; 1 Bish. Cr. Pr., § 579. The averment of the indictment in the particular we are considering, belongs to that class of averments which are not descriptive of the fact or character of the offense, and are not required to be proven with any degree of precision.—1 Greenl. Ev, § 65; 1 Bish. Cr. Procedure, § 579.

We are without a statute declaring a conspiracy formed in this State to commit a felony or a misdemeanor in a sister State, an indictable offense, as we are without a statutory declaration of the elements or constituents of a criminal conspiracy. The Criminal Code declares the

punishment to be inflicted for the offense of a conspiracy to commit a felony or a misdemeanor, and, it may be, refers exclusively to a conspiracy in this State to commit within the State a felony or misdemeanor as the Code defines these offenses. But the doctrine has long been established, in civil and criminal cases, that the common law so far as adapted to our condition, consistent with our institutions, and unaffected by legislation, prevails here.—1 Brick. Dig. 349, §§ 1–12. In *State v. Pierson*, 12 Ala. 149, it was held, that the common law of this State on the subject of homicide, is derived from and the same as the common law of England. The criminating element and constituent of an indictable conspiracy, is the vicious, unlawful combination, the corrupt and corrupting agreement, and wherever the common law prevails, if the combination is formed, and the agreement entered into, to commit a known felony, *malum in se*, the offense is complete. There needs no overt act—no effort at consummation; the combination and agreement are of the essence, the gist of the offense; and as a distinct substantive offense it is then committed. The place at which it is intended to commit the felony is not material; it is the law of the place where the conspiracy is formed which is broken. A conspiracy at common law is a misdemeanor, and the Code provides the punishment which is to be inflicted on conviction of a misdemeanor at common law, the punishment of which is not otherwise particularly specified. It is apparent from our legislation, and its history, that the legislative intent is to preserve, not to impair or abrogate the common law, so far as it may relate to civil rights, or to crimes, is adapted to our condition and not inconsistant with our institutions, except in so far as it is superseded by express or repugnant legislation. Considering, and expressing an opinion only on the precise question the record presents, we have no hesitancy in declaring that it is an indictable common law misdemeanor, to enter into a conspiracy in this State to commit a known common law felony, *malum in se*, in a sister State.—1 Russ. Crimes, 967; 1 Whart. Cr. Law, (9th ed.), § 287; 1 Bish. Cr. Law, (7th ed.), § 111; *State v. Chapin*, 17 Ark. 561; s. c. 65 Am. Dec. 452; *Ex parte Rodgers*, 10 Texas Ct. App., 655; s. c. 38 Am. Rep. 654; *Johns v. State*, 19 Ind. 421.

[*Ex parte* Sullivan.]

For the error pointed out the judgment must be reversed and the cause remanded. The defendants will remain in custody until discharged by due course of law.