727 So.2d 131 (1998)
Ex parte Nathaniel SCROGGINS
(Re Nathaniel Scroggins v. State.)
1970216.
Supreme Court of Alabama.
July 10, 1998.
Rehearing Denied October 16, 1998.
Charles Amos Thompson, Birmingham, for petitioner.
Bill Pryor, atty. gen., and Beth Slate Poe, asst. atty. gen., for respondent.
SHORES, Justice.
We granted Nathaniel Scroggins's petition for certiorari review of a judgment of the Court of Criminal Appeals affirming his conviction of capital murder for the shooting of Richard Fields. See Scroggins v. State, 727 So.2d 123 (Ala.Cr.App.1997). The basis for granting review was to determine whether the State met its burden to establish that the only eyewitness in this capital murder case was "unavailable" to testify at trial, as that term is defined in Rule 804, Ala. R. Evid.; if he was, then his testimony at the preliminary hearing was admissible at trial. We reverse and remand.
Nathaniel Scroggins was indicted for the murder of Richard Fields; he was charged on three counts of capital murder: 1) robbery/murder, in violation of § 13A-5-40(a)(2); 2) murder while the victim is in a vehicle, in violation of § 13A-5-40(a)(17); and 3) murder by and through the use of a deadly weapon fired or otherwise used within or from a vehicle, in violation of § 13A-5-40(a)(18). The indictment charged that Scroggins murdered Richard Fields while *132 Scroggins was in the course of stealing Fields's Buick automobile.
At trial, Judge James Hard allowed the State to offer the testimony an eyewitness, Billy Joe Williams, had given at the preliminary hearing; Judge Hard allowed that evidence on the grounds that at trial Williams was "unavailable," as that term is defined in Rule 804, Ala. R. Evid. The opinion of the Court of Criminal Appeals recites facts taken from Williams's testimony:
"On December 6, 1995, the victim, 19-year-old Richard Fields, left his residence and went with some friends to the Anchor Motel, which was located on the east side of Birmingham. At the motel, he met his friend Billy Joe Williams and [Nathaniel Scroggins]. Shortly thereafter, the three young men left the motel in [Fields's] car and went to [the home of a drug dealer] to buy some marijuana. [Fields and Scroggins] agreed to split the cost of the marijuana, and [Scroggins] advanced [Fields] some money for his share of the marijuana. At the dealer's house, a member of the group purchased two $5 bags of marijuana and they then left.
"[Fields] drove to the end of the street and stopped the car. He and [Scroggins] discussed the money that was used to purchase the drugs. According to Billy Joe Williams, [Scroggins] did not believe that [Fields] intended to repay him. Williams, who was seated in the front passenger seat, testified that he was looking away and that he did not see what happened between [Fields], who was seated in the driver's seat, and [Scroggins], who was seated in the backseat. Williams testified that he heard two shots fired from the backseat, [and that he then] looked up to see [Fields] slide over and hit his head on the window.' Williams asked [Scroggins] to tell the police that they were at his aunt's house and that they did not know anything about the shooting. Williams then jumped out of the car and ran down the street to his aunt's house."
727 So.2d at 124-125. The jury convicted Scroggins, who was 16 years old at the time of the murder. The court sentenced him to life imprisonment on count one and to life imprisonment without the possibility of parole on counts two and three. The Court of Criminal Appeals affirmed Scroggins's convictions, holding that whether a witness is "unavailable" is left to the sound discretion of the trial court, 727 So.2d at 126, citing Johnson v. State, 623 So.2d 444, at 448 (Ala.Crim. App.1993). The Court of Criminal Appeals concluded that "unless this witness wanted to be found, locating him would have been virtually impossible," 727 So.2d at 128, and, therefore, that the trial court did not abuse its discretion in admitting the testimony from the preliminary hearing. The Court of Criminal Appeals did not explain in its opinion why it would have been "virtually impossible" for the state to find the only witness to this crime.
The Confrontation Clause of the Sixth Amendment to the Constitution of the United States requires that in all criminal prosecutions the accused shall have the right to be confronted with the witnesses against him. Tomlin v. State, 591 So.2d 550, 555 (Ala.Cr. App.1991), citing Kirby v. United States, 174 U.S. 47, 55, 19 S.Ct. 574, 43 L.Ed. 890 (1899). The United States Supreme Court in Ohio v. Roberts, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), emphasized that the Confrontation Clause reflects a preference for face-to-face confrontation at trial and that a primary interest secured by the Confrontation Clause is the right of cross-examination. Grantham v. State, 580 So.2d 53, 55 (Ala.Cr. App.1991), citing Ohio v. Roberts, 448 U.S. at 63, 100 S.Ct. 2531.
The Confrontation Clause and the hearsay exclusionary rule are generally designed to protect similar values. California v. Green, 399 U.S. 149, 155, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970). The hearsay exclusionary rule makes hearsay evidence inadmissible unless it falls into one of the recognized exceptions. The Alabama Rules of Evidence incorporate "unavailability" as such an exception in Rule 804:
"(a) Grounds of Unavailability. `Unavailability as a witness' includes situations in which the declarant
". . . .

*133 "(5) is absent from the hearing and the proponent of the statement has been unable to procure the declarant's attendance (or in the case of a hearsay exception under subsection (b)(2), (3), or (4), the declarant's attendance or testimony) by process or other reasonable means."
Evidence that would normally be admissible under an exception to the hearsay rule may be inadmissible because it violates the Confrontation Clause of the Sixth Amendment. Grantham v. State, 580 So.2d 53, 55 (Ala.Cr. App.1991), citing United States v. Bernard S., 795 F.2d 749, 753 (9th Cir.1986); United States v. Oates, 560 F.2d 45, 81 (2d Cir.1977). When the prosecution seeks to introduce, against a criminal defendant, the former testimony of a now unavailable witness, its burden in seeking the witness's presence is enhanced by the defendant's Sixth Amendment right to confront witnesses. Ex parte Wright, 625 So.2d 1135, 1136 n. 2 (Ala.1993). Thus, when at trial the State wishes to use a person's statement against a criminal defendant, in order for that statement to be admissible the State must either produce as a witness the person whose statement it wishes to use or else demonstrate that that person is "unavailable" for the trial. Inmon v. State, 585 So.2d 261, 265 (Ala.Cr.App.1991).
Professor Charles Gamble, the preeminent authority on Alabama evidence law, has stated, "[T]he prerequisite showing of unavailability may be greater as to prosecution witnesses in a criminal case because it takes on constitutional dimensions." C. Gamble, McElroy's Alabama Evidence, § 242.01(6)(f), p. 1130 (5th ed.1996). Professor Gamble notes that "[t]he United States Supreme Court, in a long line of decisions culminating with Ohio v. Roberts, has concluded that [admitting against a criminal defendant the testimony of a witness who does not appear at trial] may violate the Sixth Amendment right of the accused `to be confronted with the witnesses against him.'" Id., § 242.01(7), p. 1132. In order for the admission of a statement of a witness who is not present at trial to satisfy the right to confrontation of witnesses, the concerns of necessity and reliability must be satisfied. "The necessity concern customarily requires that the prosecution either produce or account for the unavailability of the declarant." Id. See Thompson v. State, 106 Ala. 67, 74, 17 So. 512, 514 (1895). Ohio v. Roberts "mandates that the prosecution have made a good faith effort to obtain the presence of the declarant at trial." C. Gamble, supra, § 242.01(7), p. 1132.
The Court of Criminal Appeals relied upon Johnson v. State, supra, to affirm the trial court's holding that the witness was "unavailable." However, Johnson v. State sets a high standard for proving that the State exercised due diligence in its attempt to procure the presence of a witness:
"A party seeking to introduce a witness's testimony from a prior proceeding at a subsequent proceeding, must establish the unavailability of the witness and the reasons therefor. Lamar v. State, 578 So.2d 1282[1382] (Ala.Crim.App.1991), cert. denied, Ex parte Lamar, 596 So.2d 659 (Ala. 1991). This predicate is fulfilled when the party offering the evidence establishes that it has exercised due diligence in obtaining the witness, but without success. See Matkins v. State, 521 So.2d 1040, 1041-42 (Ala.Crim.App.1987)."
623 So.2d at 447. In Johnson, the hearing on the unavailability of the witness included testimony of the witness's mother, the witness's girlfriend, an investigator for the State, and a jailer for the City of Birmingham. The testimony of these persons indicated that each of them had made efforts to locate the witness but had been unable to find him. The witness sought had a murder charge pending against him, and he had recently escaped from jail. Id. at 447.
Johnson's standard of due diligence is based upon Alabama law holding that a declarant is not rendered "unavailable" by absence alone. The party seeking to introduce the declarant's statement has to show that it is unable to procure the declarant's attendance either by legal process or by other reasonable means:
"If a witness who has given testimony in the course of a judicial proceeding between the parties litigant, before a competent tribunal, subsequently dies; or becomes insane; or after diligent search is not to be *134 found within the jurisdiction of the court, or if that which is equivalent be shown, that he has left the state permanently, or for such an indefinite time that his return is contingent and uncertain, it is admissible to prove the substance of the testimony he gave formerly. The rule is, however, exceptional, and it is essential to the admissibility of the evidence that some one of the contingencies, which are deemed to create the necessity, be satisfactorily shown. Thompson v. State, 106 Ala. 67, 74, 17 So. 512 [(1894)]."
Williams v. Calloway, 281 Ala. 249, 251-52, 201 So.2d 506, 508 (Ala.1967).
While the question of the sufficiency of the proof offered to establish the predicate of a witness's unavailability is addressed to the sound discretion of the trial judge, the issue is of constitutional significance in a criminal case and especially so in a capital one. Here, the State failed to show that it used due diligence and made a good faith effort in trying to locate the witness whose testimony it sought to introduce at trial. Morgan Knight, an investigator with the Jefferson County district attorney's office, was the only witness to testify as to Williams's unavailability. Knight's testimony reflects that he conducted his search for Williams primarily by telephone. He did not know whether Williams had been served with a subpoena by the Jefferson County sheriff's office. He stated that he put a "hold" on Williams, but that although the juvenile authorities arrested him and placed him in the juvenile facility, he was released before Scroggins's trial. No writ of attachment was ever issued for Williams. We therefore conclude that the State failed to carry its burden to show that Billy Joe Williams was "unavailable," so that his testimony given at the preliminary hearing would have been admissible into evidence at Scroggins's trial.
The burden of proof in all criminal prosecutions rests upon the State, with the presumption of innocence attending the defendant until the burden of proof has been met. To allow the State to simply introduce the preliminary-hearing testimony of the only eyewitness to the killing and thus shift the burden to the defendant to disprove the facts suggested in that testimony would impose on the defendant a burden so great as to deprive him of a fair trial and due process of law. Grantham v. State, supra; U.S. Const. Amend. VI.
The judgment affirming Scroggins's convictions is reversed, and the cause is remanded for the Court of Criminal Appeals to order a new trial.
REVERSED AND REMANDED.
ALMON, KENNEDY, COOK, and LYONS, JJ., concur.
HOOPER, C.J., and MADDOX, HOUSTON, and SEE, JJ., dissent.
SEE, Justice (dissenting).
I must respectfully dissent from the majority's holding that the Sixth Amendment to the Constitution of the United States prohibits the admission of the preliminary-hearing testimony of the State's absent witness, Billy Williams. The application of clear precedent of the Supreme Court of the United States establishes that the testimony of this absent witness is admissible. The State presented sufficient evidence to show that it had made a good faith effort to secure the absent witness for trial, and the witness's preliminary-hearing testimony is marked with indicia of trustworthiness.
The Confrontation Clause of the Sixth Amendment provides:
"In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him...."
U.S. Const. amend. VI. The Supreme Court has held that the Confrontation Clause applies to the States through the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States.[1]Pointer *135 v. Texas, 380 U.S. 400, 403-05, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965).

I. The Ohio v. Roberts Standard

In Ohio v. Roberts, 448 U.S. 56, 63-64, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), the Supreme Court held that the Confrontation Clause establishes a rule of admission of evidence by "necessity" that accommodates the interests embodied in the "centuries old" rule against admitting hearsay evidence and that rule's traditional exceptions.[2] Both the Confrontation Clause and the hearsay rule advance the interest of the criminal defendant not to be incriminated by evidence untested in the crucible adversarial of cross-examination. Id. at 63, 100 S.Ct. 2531 (citing Douglas v. Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965)). Both the Confrontation Clause and the hearsay rule also advance the interests of the People "in effective law enforcement, and in the development and precise formulation of the rules of evidence applicable in criminal proceedings." Id. at 64, 100 S.Ct. 2531. Thus, both the Confrontation Clause and the hearsay rule balance the "competing interests" of the criminal defendant and the People in determining whether prior statements by an absent witness may be admissible in a criminal trial. Id. at 64, 100 S.Ct. 2531 ("This Court, in a series of cases, has sought to accommodate these competing interests.").
In Roberts, 448 U.S. at 65, 100 S.Ct. 2531, the Supreme Court struck the balance between the competing interests of the criminal defendant and the People by framing a two-pronged test for the admissibility of out-of-court statements made in judicial proceedings by a witness who is subsequently absent from the trial. First, the prosecution must show that the witness who made the out-of-court statement is unavailable for trial despite good-faith efforts to locate and present that witness. Id. at 65, 74, 100 S.Ct. 2531. Accord Barber v. Page, 390 U.S. 719, 724-25, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968) ("a witness is not `unavailable' for purposes of the ... exception to the confrontation requirement unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial"). Second, the out-of-court statement must be supported by indicia of trustworthiness. Roberts, 448 U.S. at 65, 100 S.Ct. 2531. Accord Mancusi v. Stubbs, 408 U.S. 204, 216, 92 S.Ct. 2308, 33 L.Ed.2d 293 (1972). These fact-based determinations are entrusted to the sound discretion of the trial court. Nolen v. State, 469 So.2d 1326, 1328 (Ala.Crim.App.1985).
In Roberts, 448 U.S. at 75-76, 100 S.Ct. 2531, the Supreme Court held that an out-of-court statement of an absent witness was admissible. The prosecution presented the testimony of one person, the mother of the witness, who stated that she could not find or contact the witness, and presented evidence that the prosecution had made several unsuccessful attempts to subpoena the absent witness. Id.
The Supreme Court quoted portions of the opinion of the state court of appeals, which had held that the prosecution had not sufficiently proved a good-faith effort to procure the witness:
"`[W]e have no witness from the prosecution to testify ... that no one on behalf of the State could determine [the absent witness's] whereabouts, [or] that anyone had exhausted contact with [a] social worker [who had seen the witness].' Unavailability *136 would have been established, the court said, `[h]ad the State demonstrated that its subpoenas were never actually served on the witness and that they were unable to make contact in any way with the [absent] witness.... Until the [defendants'] voir dire, ... the State had done nothing, absolutely nothing, to show the Court that [the absent witness] would be absent because of unavailability, and they showed no effort having been made to seek out her whereabouts for purpose of trial.'"
Id. at 60, 100 S.Ct. 2531 (emphasis added) (citation omitted). Despite the prosecution's failure to produce testimony from a member of the prosecution team, and despite other purported deficiencies, the Supreme Court held that the prosecution had sufficiently proved a reasonable good-faith effort by subpoenaing the absent witness and by asking the absent witness's mother about her whereabouts. Id. at 76, 100 S.Ct. 2531. The Supreme Court noted that although the prosecution could have followed up with the social worker by telephone, it was not reasonably required to do so. Id. Thus, the Supreme Court held that the testimony of one witness, who was not a member of the prosecution team, was sufficient to support the admission of the prior testimony of the absent witness, even though all the follow-up leads to find the absent witness had not been exhausted.
In this case, not only did the State present more evidence of a good-faith effort to secure the witness than did the prosecution team in Roberts, it also presented evidence that Roberts expressly held goes beyond the requirements of the Confrontation Clause.[3] As the prosecution did in Roberts, 448 U.S. at 76, 100 S.Ct. 2531, the State subpoenaed the absent witness in this case without success. As the prosecution did in Roberts, id. at 75, 100 S.Ct. 2531, the State talked with various members of the absent witness's family in an effort to determine his whereabouts for trial. The State's investigator also talked to people who lived in Williams's neighborhood, Williams's probation officer, a utility company, and the police, in an effort to find Williams. Prior to trial, when the investigator discovered that Williams was wanted by the police, he had a "hold" put on Williams so that if the jail authorities incarcerated Williams they would contact the investigator. When Williams was arrested, however, the juvenile authorities inadvertently released him before contacting the investigator.[4]
*137 Further, unlike the prosecution in Roberts, the State's investigator made follow-up telephone calls in an effort to track down Williams on the day before trial. Moreover, unlike the prosecution in Roberts, the State took the additional step of placing its investigator on the stand for examination and cross-examination. Although the State could have placed one more telephone call or could have sought to obtain a warrant for Williams's arrest, "the great improbability that such efforts would have resulted in locating the witness, and would have led to [his] production at trial, neutralizes any intimation that a concept of reasonableness required their execution." Roberts, 448 U.S. at 76, 100 S.Ct. 2531. Thus, the State more than met its burden, as defined by the Supreme Court in Roberts, to show a reasonable good-faith effort to locate the absent witness.
The State also met its burden under the second prong of the Confrontation Clause test of admissibility by showing that Williams's out-of-court testimony was supported by indicia of trustworthiness. As with the absent witness's prior statement in Roberts, 448 U.S. at 71-73, 100 S.Ct. 2531, Williams's prior statement was given in open court at a preliminary hearing, and defense counsel was given the opportunity to cross-examine him. As with the defense counsel in Roberts, id. at 71, 100 S.Ct. 2531, Scroggins's defense counsel took advantage of the preliminary hearing to ask Williams questions pertinent to the issue sat trial. Defense counsel thoroughly cross-examined Williams about Scroggins's shooting the victim and about Scroggins's actions immediately thereafter. Thus, as in Roberts, the preliminary-hearing testimony of the absent witness in this case was supported by indicia of trustworthiness ample under the Sixth Amendment's Confrontation Clause to support its admissibility. Accordingly, the trial court did not abuse its discretion in admitting the prior testimony of Williams.

II. Application of Ohio v. Roberts in Johnson v. State
The majority states that the Court of Criminal Appeals in "Johnson v. State[, 623 So.2d 444, 447-48 (Ala.Crim.App.1993)], set[] a high standard for proving that the State exercised due diligence in its attempt to procure the presence of a witness." 727 So.2d at 134. The majority states that in Johnson the State sufficiently proved the unavailability of the witness by presenting the testimony of multiple witnesses and evidence of extensive follow-up efforts. 727 So.2d at 127. The majority then concludes that because the State, in this case, presented the testimony of only one person and did not follow up by seeking a warrant for Williams's arrest, it failed to meet the heightened Confrontation Clause standard set in Johnson. I do not agree that Johnson modified the admissibility standard established by the Supreme Court in Roberts.
The sum total of the Johnson court's legal analysis of the admission of testimony from the absent witness in that case is as follows:
"A party seeking to introduce a witness's testimony from a prior proceeding ... must establish the unavailability of the witness and the reasons therefor. Lamar v. State, 578 So.2d 1382 (Ala.Crim.App.1991), cert. denied, Ex parte Lamar, 596 So.2d 659 (Ala.1991). This predicate is fulfilled when the party offering the evidence establishes that it has exercised due diligence in obtaining the witness, but without success. See Matkins v. State, 521 So.2d 1040, 1041-42 (Ala.Crim.App.1987).
"The sufficiency of proof for establishing the predicate of unavailability is left to the sound discretion of the trial court. Nolen v. State, 469 So.2d 1326, 1328 (Ala.Crim. App.1985). Here, the trial court ruled that the State had exercised due diligence in trying to procure the witness. The trial court made this determination after a thorough examination of the matter. We cannot hold that the trial court abused its discretion."
Johnson, 623 So.2d at 447-48.
This language quoted from Johnson does not purport to set, establish, modify, or replace any standard. Instead, in Johnson the Court of Criminal Appeals cites Matkins, 521 So.2d at 1041, that expressly relied on the standard established in Roberts, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597, which struck the balance between the competing interests of the criminal defendant and the People. It would be strange indeed, for Johnson, which ultimately relied on Roberts, to silently establish a new multiple-witness/follow-up exhaustion *138 standard that the facts in Roberts itself would not meet. At most, Johnson is an application of the federal standard to facts that were more than sufficient to meet that standard.
By the majority's logic, a holding, for example, that video-tape and eyewitness testimony is sufficient evidence to support a conviction of a criminal offense would set a heightened evidentiary standard requiring the reversal of all future convictions that were not equally supported by videotape and eyewitness testimony. This has never been the law. Compare McLeod v. State, 627 So.2d 1066 (Ala.Crim.App.1993) (upholding a defendant's conviction on a controlled substance offense based on videotape and eyewitness testimony), with Gary v. State, 473 So.2d 604 (Ala.Crim.App.1985) (upholding a defendant's conviction on a controlled substance offense based on the physical proximity of the defendant and the defendant's possessions to the controlled substance). Thus, the Court of Criminal Appeals did not expressly set a new Sixth Amendment standard in Johnson, and the argument that it implicitly did so is untenable.
Ultimately, it is the Supreme Court of the United States, and not the Court of Criminal Appeals, or this Court, that sets the standard for enforcing the Sixth Amendment to the Constitution of the United States. See Martin v. Hunter's Lessee, 14 U.S. (1 Wheat.) 304, 4 L.Ed. 97 (1816). The majority's interpretation of the Confrontation Clause to require multiple witnesses and the exhaustion of almost all follow-up opportunities is a dramatic departure from the interpretation of that Clause by the Supreme Court of the United States. The majority effectively restrikes the balance established in Roberts for the admissibility of the preliminary-hearing testimony of an absent witness, favoring the interest of the criminal defendant at the expense of the interests of the People.
I dissent.
HOOPER, C.J., and MADDOX and HOUSTON, JJ., concur.
NOTES
[1] The Due Process Clause provides:

"No State shall ... deprive any person of life, liberty, or property, without due process of law...."
U.S. Const. amend. XIV, § 1.
[2] The Federal Rules of Evidence provide in pertinent part:

"Hearsay is not admissible except as provided by these rules or by other rules prescribed by the Supreme Court pursuant to statutory authority or by Act of Congress."
Rule 802, Fed.R.Evid.
"The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
"(1) Former Testimony.Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered ... had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination."
Rule 804(b), Fed.R.Evid.
"`Unavailability as a witness' includes situations in which the declarant
". . . .
"(5) is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance ... by process or other reasonable means."
Rule 804(a), Fed.R.Evid.
[3] In this case, the Alabama Rules of Evidence, instead of the Federal Rules of Evidence, were applicable. For purposes of Confrontation Clause analysis in this case, however, there are no substantive differences between the rules. The Alabama Rules of Evidence provide in pertinent part:

"Hearsay is not admissible except as provided by these rules, or by other rules adopted by the Supreme Court of Alabama or by statute."
Rule 802, Ala. R. Evid.
"The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
"(1) Former Testimony. Testimony of a witness, in a former trial or action, given (A) under oath, (B) before a tribunal or officer having by law the authority to take testimony and legally requiring an opportunity for cross-examination, (C) under circumstances affording the party against whom the witness was offered an opportunity to test his or her credibility by cross-examination, and (D) in litigation in which the issues and parties were substantially the same as in the present cause."
Rule 804(b), Ala. R. Evid. See II Charles W. Gamble, McElroy's Alabama Evidence § 245.07(4)(c) (5th ed.1996) (stating that a preliminary hearing in a criminal proceeding qualifies as a "former trial or action" under Rule 804(b)).
"`Unavailability as a witness' includes situations in which the declarant
". . . .
"(5) is absent from the hearing and the proponent of the statement has been unable to procure the declarant's attendance ... by process or other reasonable means."
Rule 804(a), Ala. R. Evid.
[4] I note that there was no evidence that the jail officials who released Williams were aware that Williams was scheduled to testify at the upcoming trial of Scroggins. Compare Motes v. United States, 178 U.S. 458, 20 S.Ct. 993, 44 L.Ed. 1150 (1900) (reversing the admission of prior testimony of an absent witness where a member of prosecution team released the witness, who was under indictment, under his own recognizance with full knowledge that he would be needed as a witness) with United States v. Mathis, 550 F.2d 180, 182 (4th Cir.1976) (upholding the admission of the prior testimony of an absent witness where "there [was] no evidence that the prison official who released [the witness] knew that [the witness] would be needed as a witness"), cert. denied, 429 U.S. 1107, 97 S.Ct. 1140, 51 L.Ed.2d 560 (1977).