(85 South. 10)

CANIDATE v. WESTERN UNION TELE-
GRAPH CO. (6 Div. 979.)

(Supreme Court of Alabama. Jan. 15, 1920.)·

TELEGRAPHS AND TELEPHONES ⬅26¾, New, vol. 7A Key-No. Series—COMPANY UNDER FEDERAL CONTROL NOT LIABLE FOR FAULT.

Neither a telegraph company, as such, nor the persons serving it, were subject to individual, corporate, or personal liability to a third person for breach of contract or for a tort predicated alone of a contract for the transmission of a message while the company was under exclusive federal control, pursuant to resolution of Congress and presidential proclamation (U. S. Comp. St. Ann. Supp. 1919, § 3115¾x).

Appeal from Circuit Court, Jefferson County; J. C. B. Gwin, Judge.

Action by Miss Rochel Canidate against the Western Union Telegraph Company for damages for injuries as set forth in the complaint. Judgment for plaintiff, and defendant appeals. Affirmed.

The following is plea 2:

For further separate plea in this behalf to the complaint and to each count thereof, separately and severally, defendant avers: That plaintiff ought not to maintain this action, for that heretofore, to wit, on the 16th day of July, 1918, the Senate and House of Representatives of the United States did by joint resolution enact the following, viz.:

"That the President during the continuance of the present war is authorized, * * * whenever he shall deem it necessary for the national security or defense, to supervise or to take possession and assume control of any telegraph, telephone, marine cable, or radio system or systems, or any part thereof, and to operate the same in such manner as may be needful or desirable for the duration of the war, which supervision, possession, control, or operation shall not extend beyond the date of the proclamation by the President of the exchange of ratifications of the treaty of peace: Provided, that just compensation shall be made for such supervision, possession, control or operation, to be determined by the President; and if the amount thereof, so determined by the President, is unsatisfactory to the person entitled to receive the same, such person shall be paid 75 per centum of the amount so determined by the President and shall be entitled to sue the United States to recover such fur-

ther sum as, added to said 75 per centum, will make up such amount as will be just compensation therefor, in the manner provided for by section 24, paragraph 20, and section 145 of the Judicial Code: Provided further, that nothing in this act shall be construed to amend, repeal, impair, or affect existing laws or powers of the states in relation to taxation or the lawful police regulations of the several states, except wherein such laws, powers, or regulations may affect the transmission of government communications, or the issue of stocks and bonds by such system or systems."

And defendant avers that under and pursuant to the authority conferred upon him by the joint resolution of the Congress aforesaid the President of the United States did, on, to wit, the 22d day of July, 1918, take the action that is set out in the following proclamation promulgated and published by the President, viz.:

"By the President of the United States of America:

"A Proclamation.

"Whereas, the Congress of the United States, in the exercise of the constitutional authority vested in them by joint resolution of the Senate and the House of Representatives, bearing date July 16, 1918, resolved: [Here follows joint resolution set out ante.]

"And whereas, it is deemed necessary for the national security and defense to supervise and to take possession and assume control of all telegraph and telephone systems and to operate the same in such manner as may be needful or desirable:

"Now, therefore, I, Woodrow Wilson, President of the United States, under and by virtue of the powers vested in me by the foregoing resolution, and by virtue of all other powers thereto me enabling, do hereby take possession and assume control and supervision of each and every telegraph and telephone system, and every part thereof, within the jurisdiction of the United States, including all equipment thereof and appurtenances thereto whatsoever and all materials and supplies.

"It is hereby directed that the supervision, possession, control, and operation of such telegraph and telephone systems hereby by me undertaken shall be exercised by and through the Postmaster General, Albert S. Burleson. Said Postmaster General may perform the duties hereby and hereunder imposed upon him, so long and to such extent and in such manner as he shall determine through the owners, managers, board of directors, receivers, officers, and employés of said telegraph and telephone systems.

"Until and except so far as said Postmaster General shall from time to time by general or special orders otherwise provide, the owners, managers, board of directors, receivers, officers, and employés of the various telegraph and telephone systems shall continue the operation thereof in the usual and ordinary course of the business of said systems, in the names of their respective companies, associations, organizations, owners, or managers, as the case may be.

"Regular dividends hitherto declared, and maturing interest upon bonds, debentures, and other obligations, may be paid in due course; and such regular dividends and interest may

continue to be paid until and unless the said Postmaster General shall, from time to time, otherwise by general or special orders determine; and, subject to the approval of said Postmaster General, the various telegraph or telephone systems may determine upon and arrange for the renewal and extension of maturing obligations.

"By subsequent order of said Postmaster General supervision, possession, control, or operation may be relinquished in whole or in part to the owners thereof of any telephone or telegraph system or any part thereof supervision, possession, control, or operation of which is hereby assumed or which may be subsequently assumed in whole or in part hereunder.

"From and after 12 o'clock midnight on the 31st day of July, 1918, all telegraph and telephone systems included in this order and proclamation shall conclusively be deemed within the possession and control and under the supervision of said Postmaster General without further act or notice.

"In witness whereof I have hereunto set my hand and caused the seal of the United States to be affixed.

"Done by the President in the District of Columbia, this 22d day of July, in the year of Our Lord nineteen hundred and eighteen, and of the independence of the United States the one hundred and forty-third.

"Woodrow Wilson.
"[Seal] By the President:
"Frank L. Polk, Acting Secretary of State."

Defendant avers that the alleged cause of action sued on herein arose subsequently, to the passage and taking effect of the joint resolution of the Congress aforesaid, and of the action and proclamation of the President of the United States aforesaid; that the entire telegraph system of this defendant was, on the date of the message sued on, up to and including the date of the institution of this action, under the supervision of and operated by the government of the United States, which through its Postmaster General did at all said times use the usual and ordinary course of business, together with the officers, employés, agents and agencies, rates, practices, and facilities of this defendant aforesaid.

Wherefore, this defendant says that the contract for the transmission and delivery of the message aforesaid was made by the sender of said message with the government of the United States, or with this defendant as an agency of the government of the United States, and not otherwise, and defendant prays the judgment of this court whether plaintiff can or ought to maintain the action.

The demurrers were as follows:

"(1) Because it appears therefrom at the time of the alleged wrongs complained of that the defendant company was being operated by the owners, managers, boards of directors, receivers, officers, and employés of defendant.

"(2) Because from aught that appears therefrom the alleged negligence complained of was the negligence of defendant's agents or servants acting within the line and scope of their authority.

"(3) Because the matters of defense set forth therein are available to defendant under the general issue.

"(4) Because from aught that appears therefrom the alleged negligence complained of was the negligence of defendant.

"(5) Because said plea is a plea to the jurisdiction of this court and is not sworn to.

"(6) Because the averments thereof are vague, uncertain, and indefinite, and constitute no legal—"

Goodwyn & Ross, of Bessemer, for appellant. This cause should be reversed, on the authority of Witherspoon & Sons v. Postal Tel. Cab. Co. (D. C.) 257 Fed. 758, and Shepard's annotations thereon.

Johnston & Cocke, of Birmingham, and Francis R. Stark, of New York City, for appellee. This case is ruled by the case of Dakota Cent. Tel. Co. v. South Dakota, 250 U. S. 163, 39 Sup. Ct. 507, 63 L. Ed. 910, 4 A. L. R. 1623; 250 U. S. 135, 39 Sup. Ct. 502, 63 L. Ed. 897; (D. C.) 255 Fed. 99; 120 Miss. 325, 81 South. 404; 120 Miss. 325, 82 South. 311; 99 S. E. 486.

McCLELLAN, J. The plaintiff (appellant) instituted this action against defendant (appellee) on the 29th day of April, 1919. The complaint contains two counts, the first ex contractu and the second ex delicto, claiming damages for the failure of the defendant company promptly to transmit and deliver a telegraphic message committed to the telegraph operator at Pike Road, Ala., to the plaintiff at Bessemer, Ala., on March 21, 1919. Besides a general traverse of the allegations of these counts, the defendant interposed plea 2; reproduced in the statement of the case ante. Demurrer to the plea, also stated in the report of this appeal, was overruled. Pretermitting the suggestion that the matter asserted could, if available at all, be introduced under the general issue in refutation of material allegations of both counts of the complaint, the meritorious question raised by the demurrer will be decided; counsel noting that a large number of pending causes will be affected by the conclusion reached on this review.

The plea's substance is that at the time this message was filed, as well as at the time this suit was commenced, the defendant's telegraph lines were in the exclusive possession and control of the United States, acting through the efficient exercise by the President of the discretion and authority vested in him by the resolution of Congress, quoted in the plea, of the 16th day of July, 1918 (U. S. Comp. St. Ann. Supp. 1919, § 3115¾x), and through the President's proclamation committing to the Postmaster General the supervision, possession, control, and operation of the wire lines within the jurisdiction of the United States. The proposition of legal result underlying the plea is, in our opinion, supported and vindicated by the Supreme

Court in Dakota Central Telephone Co. v. State of South Dakota et al. (decided June 2, 1919) 250 U. S. 163, 39 Sup. Ct. 507–510, 63 L. Ed. 910, 4 A. L. R. 1623. The control and possession of all wire lines taken by the United States government, through its official agencies and under validly vested discretionary authority unrevisable by the judicial departments, state and federal, was a complete control and an exclusive possession, thus relegating to the category of mere agents of the United States the functions of the wire companies, as individual entities, and the persons whose service was directed to carrying on, even for private persons or institutions, the business of receiving and transmitting intelligence by wire. In the cited decision the Supreme Court, through Chief Justice White, said:

"But although it may be conceded that there is some ground for contending, in view of the elements of authority enumerated in the resolution of Congress, that there was power given to take less than the whole if the President deemed it best to do so, we are of opinion that authority was conferred as to all the enumerated elements and that there was hence a right in the President to take complete possession and control to enable the full operation of the lines embraced in the authority. The contemporaneous official steps taken to give effect to the resolution, the proclamation of the President, the action of the Postmaster General under the authority of the President, the contracts made with the telephone companies in pursuance of authority to fix their compensation, all establish the accuracy of this view, since they all make it clear that it was assumed that power to take full control was conferred and that it was exerted so as to embrace the entire business and the right to the entire revenues to arise from the act of the United States in carrying it out. Indeed, Congress in subsequently dealing with the situation thus produced would seem to have entertained the same conception as to the scope of the power conveyed by the resolution and dealt with it from that point of view. Act Oct. 30, 1918, c. 197, 40 Stat. 1017."

The complete control and the exclusive possession of this, as well as all other wire lines within the resolution of Congress, as effected through the proclamation of the President, having passed to the United States, the defendant (appellee) was not and could not have been engaged in the business described in the complaint, except, and that only, under the derivative authority, a mere agency, imposed upon the telegraph company by the paramount governmental processes set forth in the plea, to the end that whatever service the physical properties and the company's personnel might render in the transmission of intelligence by wire should be and was a public governmental service or function, to or in respect of the discharge of which, within the realm of the company's legitimate activi-

ty under the complete control and exclusive possession of the government, neither the company, as such, nor the persons so serving in the operation of any of the functions of the company so dominated, were subject to individual, corporate, or personal liability to third persons for a breach of a contract or for a tort (the breach of a public duty) predicated alone of a contract for the transmission of intelligence by wire. Belknap v. Schild, 161 U. S. 10, 17, 18, 16 Sup. Ct. 443, 40 L. Ed. 599; In re Ayers, 123 U. S. 443, 501, 502, 8 Sup. Ct. 164, 31 L. Ed. 216.

In view of the decision of the Supreme Court in the Dakota case, it is unnecessary to comment upon the opinion at nisi prius, reported under the title of Witherspoon & Sons v. Postal Telegraph & Cable Company (D. C.) 257 Fed. 758.

The judgment is affirmed.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.