(86 South. 23)

**HINES, Director General of Railroads, v. MINIARD. (6 Div. 51.)**

(Supreme Court of Alabama. June 3, 1920. Rehearing Denied June 30, 1920.)

**1. Carriers ⟨⫫⟩314(4)—Charge of "gross and wanton negligence" held to impute a willingness to inflict injury.**

Complaint, charging conductor with "gross and wanton negligence," *held* to impute to him a willingness to inflict injury, or a willfulness in pursuing a course of conduct which would naturally or probably result in injury, or an attempt to perpetrate wrong.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Gross Negligence; Wanton Negligence.]

**2. Carriers ⟨⫫⟩284(1)—Carrier's obligation to transport insane persons stated.**

A carrier cannot absolutely refuse transportation to insane persons, but has the right to require that such a passenger be in charge of a competent attendant, and, if necessary to the reasonable safety and comfort of other passengers, to remove such passenger from the train at the first station where he may be properly cared for.

**3. Carriers ⟨⫫⟩284(1)—Must use high degree of care to prevent insane passenger from harming other passengers.**

A carrier transporting an insane passenger has the duty of exercising a high degree of care to prevent such passenger from harming other passengers.

**4. Carriers ⟨⫫⟩315(4)—Charge of gross and wanton negligence as to passenger must be proved.**

Passenger, charging conductor with gross and wanton negligence, must prove such negligence, and cannot recover on proof of simple negligence.

**5. Carriers ⟨⫫⟩284(1)—Not liable for conduct and abusive language of insane passenger if conductor endeavored to protect another passenger.**

A railroad was not liable for abusive and immodest conduct and language of insane ne-

gro woman passenger, if its conductor, charged with gross and wanton negligence in failing to protect another passenger therefrom, acting in good faith, did his best to extend such protection as was reasonably in his power.

**6. Carriers ⟨⫫⟩320(6)—Whether conductor did his best to protect a passenger from insane passenger held for jury.**

Whether a conductor in good faith, did his best, under the circumstances, to protect a passenger from another insane passenger, *held* for the jury.

**7. Carriers ⟨⫫⟩321(4)—Refusal to instruct that it was carrier's duty to accept insane negro as passenger held reversible error.**

In action by passenger for injuries caused by abusive manner, language, and immodest conduct of an insane negro passenger in same car, refusal to instruct that it was the carrier's duty to accept the negro as a passenger *held* reversible error.

**8. Carriers ⟨⫫⟩284(1)—Railroad cannot shift danger from insane passenger from passengers in coach to others equally entitled to protection.**

While it is a railroad's duty to take every reasonable precaution to prevent an insane passenger from annoying or injuring other passengers, providing another available place for her, or putting her off if necessary, it has no right to shift the annoyance or prospective danger of her presence from passengers in the coach to others equally entitled to protection.

**9. Carriers ⟨⫫⟩318(1)—Evidence held not to show conductor negligently failed to protect from insane passenger.**

In passenger's action against railroad for injuries caused by abusive and immodest conduct and language of insane negro passenger, in which conductor was charged with gross and wanton negligence, evidence *held* insufficient to show that conductor had negligently failed or refused to protect plaintiff from such abuse when it was reasonably possible for him to have done so.

Appeal from Circuit Court, Jefferson County; Romain Boyd, Judge.

Action by Mary Miniard against Walker D. Hines, as Director General of Railroads, operating the Illinois Central Railroad, for damages for injuries while a passenger. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Count 2 is as follows:

Plaintiff claims of the defendant the sum * * * for that during the month of April, 1919, defendant was engaged in operating a railroad for passengers from the city of Chicago, Ill., to the city of Birmingham, Ala., and for that on said date plaintiff was a passenger on one of defendant's trains, and, while a passenger, a negro woman, who was riding on said train, cursed and abused plaintiff, calling her vile names, and plaintiff avers that she called upon the conductor of said train to protect her from such abuse and epithets, but that said ne-

gro woman was not prevented from continuing such abuse and epithets, but was wantonly and willfully permitted by said conductor to continue to curse, abuse, and threaten plaintiff, and by reason of such actions on the part of said negro woman plaintiff was greatly embarrassed, frightened, chagrined, and humiliated, and as a proximate result thereof was caused to suffer great mental pain and anguish, was made sick, frightened, and nervous, all to plaintiff's damage as aforesaid. Plaintiff, avers, with a knowledge of the fact that the said negro woman had cursed, abused, and threatened plaintiff, that the said negro woman had conducted herself in said car, immodestly, loudly, and boisterously, and was continuing to act in said manner in said car and towards this plaintiff, and with ample time and opportunity to take some action to prevent a continuation, the defendant's servant or agent in charge of said car wantonly failed, refused, or declined, to exert any effort whatever to prevent such continuation of abuse and immodest conduct or to protect plaintiff therefrom.

Plaintiff further avers that her said injuries and damages were proximately caused by the gross and wanton negligence of the defendant's conductor, whose name is to plaintiff unknown, but who was in charge of said train and car, in grossly and wantonly failing to make any effort whatever to prevent a continuation of such cursing, abusing, and immodest conduct, and epithets, with the knowledge aforesaid.

Charge 5, refused to the defendant:

If you believe from the evidence that the agents of the defendant did their best in their honest judgment to protect the plaintiff, then your verdict must be for the defendant.

Percy, Benners & Burr, of Birmingham, for appellant.

A passenger on a railroad train has no cause of action against the railroad on account of the unnatural actions of an insane person, a fellow passenger on the railroad. L. & N. R. Co. v. Brewer, 147 Ky. 166, 143 S. W. 1014, 39 L. R. A. (N. S.) 647, Ann. Cas. 1913D, 151. A railroad company is under no duty to carry an insane person in the baggage car. Owens v. Macon & Birmingham Railroad Co., 119 Ga. 230, 46 S. E. 87, 63 L. R. A. 946. A railroad company has no right to put an insane person, a passenger on its train, into the Pullman car. Pullman Car Co. v. Krauss, 145 Ala. 395, 40 South. 398, 4 L. R. A. (N. S.) 103, 8 Ann. Cas. 218. A railroad company has no right to put a passenger into the smoking car. L. & N. R. Co. v. Weathers, 163 Ala. 48, 50 South. 268. A railroad company cannot eject a passenger, under disability, at an unsuitable time and place. C. of Ga. Ry. Co. v. Bagley, 173 Ala. 611, 55 South. 894; L. & N. R. R. Co. v. Johnson, 108 Ala. 62, 19 South. 51, 31 L. R. A. 372. An error in judgment, honestly made does not constitute wantonness. B. R., L. & P. Co. v. Norton, 7 Ala. App. 571, 61 South. 459; B. R., L. & P. Co. v. Drennen, 190 Ala. 176, 67 South. 386.

Black & Harris, of Birmingham, for appellee.

A carrier must exercise the highest diligence to make its passenger's journey free from insult, especially a female passenger. 194 Ala. 211, 69 South. 615; 194 Ala. 338, 70 South. 7. A carrier is under no duty to accept or to continue to transport any person who interferes with the reasonable comfort and convenience of other passengers. 152 Ala. 101, 44 South. 538, 126 Am. St. Rep. 17; 194 Ala. 211, 69 South. 615; 144 Ky. 649, 139 S. W. 856, 36 L. R. A. (N. S.) 337; 57 Ind. 576, 26 Am. Rep. 68; 55 N. Y. 108, 14 Am. Rep. 190. It was the duty to remove the woman at the first station at which she could be properly cared for. 145 Ala. 395, 40 South. 398, 4 L. R. A. (N. S.) 103, 8 Ann. Cas. 218, and authorities next above. It was the conductor's duty to act as soon as the passenger began committing the disturbing acts. 11 Allen (Mass.) 304, 87 Am. Dec. 714; 59 N. H. 564, 47 Am. Rep. 228; 46 S. E. 87; 179 Ala. 263, 60 South. 111. The presumption is that a conductor is in charge of an entire train. 155 Ala. 329, 46 South. 457, 130 Am. St. Rep. 29; 260 Pa. 430, 103 Atl. 873. The conductor's act here amounted to wantonness. 190 Ala. 176, 67 South. 386; 79 Ala. 328; 194 Ala. 338, 70 South. 7.

SAYRE, J. This case was submitted to the jury on count 2 of the complaint, which should appear in the report.

[1] It will be observed that the gravamen of the charge against defendant is that its conductor, in the circumstances described, failed to take preventive action, and this is described as "gross and wanton negligence." The charge is intended to impute to defendant's conductor more than any degree of negligence, "which can never mean other than the omission of action without intent, existing or imputed, to commit wrong." It imputes to the conductor—and has been so properly treated by the parties throughout the progress of this cause—that recklessness, or wantonness, or worse, which implies a willingness to inflict injury, or a willfulness in pursuing a course of conduct which would naturally or probably result in injury, or an intent to perpetrate wrong. Ga. Pac. Rwy. Co. v. Lee, 92 Ala. 262; 9 South. 230.

The wrong of which plaintiff complains occurred in the state of Illinois, where, it is gathered from the evidence, Jim Crow cars are prohibited and negro passengers on railroad trains are entitled to share accommodations with white passengers, without discrimination on account of race, color, or previous condition of servitude—a state of law and fact for which, of course, the defendant in this case can in no wise be held answerable.

It appeared without dispute that the negro woman in question was insane, and that she was in the keeping of a negro man, who

apologetically explained 'the situation to plaintiff, and exerted himself in some degree at least to control the conduct of his charge. Evidence for the plaintiff tended to show that the negro woman got on the train in Chicago, where plaintiff, about 8 o'clock in the evening, took passage with a ticket for Birmingham, and that at that time she was talking loudly and profanely. Defendant, on the other hand, offered to show that the negro woman and her attendant were traveling on a ticket from Indianapolis to Jackson, Tenn., and that she boarded the train at Effingham, some 200 miles south of Chicago. Plaintiff, in company with her husband and an infant child, traveled in a chair car, in which there were a number of other passengers, white and black, and she testified that she was disturbed by the insane woman during the night, giving details of the woman's language and behavior, which must have been very distasteful to her. We do not, however, find any evidence in the record which would warrant the conclusion that plaintiff was at any time in danger of physical harm. At a point which defendant's witnesses tended to locate at about 30 minutes before the train reached Cairo, or Cairo Junction, a place on the border line between Illinois and Kentucky, and at an early hour in the morning, plaintiff sent the porter for the conductor, and to the latter complained of the insane woman's presence and behavior. The conductor, according to plaintiff's testimony, answered her complaint by saying, in effect, that he was "awfully sorry," that he was not the conductor who let the woman on the train, and that as soon as the train got to Mason and Dixon's Line he would put her in the Jim Crow car. The conductor's version of what passed between himself and plaintiff was that she told him that she was being disturbed by the crazy woman, and asked how far it was before the negroes would have to get out of that car; that he told her that Cairo Junction was the next stop, and that she said she would be very glad, that she was afraid of crazy negroes; to which he replied that he was sorry, and would transfer (the negroes) at Cairo Junction, just as quick as the law permitted. Accordingly at Cairo the negroes were put into another car.

[2, 3] A carrier cannot absolutely refuse transportation to insane persons. These people must be carried to the asylums, if nowhere else. The carrier has the right to require that such a passenger be in charge of a competent attendant; upon it rests the duty of exercising a high degree of care that he do no harm to other passengers, and, if it be found necessary to the reasonable safety and comfort of other passengers, such passenger may be removed from the train at the first station where he may be properly cared for. L. & N. R. R. Co. v. Brewer, 147 Ky. 166, 143 S. W. 1014, 39 L. R. A. (N. S.) 647, Ann. Cas. 1913D, 151; Meyer v. St. L., I. M. & S. Ry. Co., 54 Fed. 116, 4 C. C. A. 221.

[4-6] But the complaint in this case goes beyond the allegation of simple negligence; it alleges wanton wrong; and by it plaintiff's case must stand or fall. It is matter of serious doubt that the evidence shows any cause of offense to plaintiff after her complaint to the conductor, or any reason why, thereafter, the conductor should have done more than he did. But the testimony has suffered some change in the process of being reduced to the form of a continuous narrative, questions being omitted, and it may therefore be conceded that in its original form it afforded some sort of warrant for the inference that, within the time limited by the descriptive allegations of the complaint, the conductor wantonly failed in the performance of his duty to plaintiff and other passengers on the car; but if there was no such wanton failure, if the conductor, acting in good faith and with a purpose not to fail in extending such protection as was reasonably in his power, did his best to that end, then it is clear that plaintiff was not entitled to recover on her complaint. The evidence warranted a submission to the jury of defendant's version of its conductor's action in the premises as being, in his honest judgment, the best that could be done in the circumstances, and, if so, a complete answer to the charge alleged in the complaint.

[7] Appellee contends that, even though the charge in question (charge 5 refused to defendant) should have been given, its refusal should not work a reversal, for the reason that the same proposition, substantially, was laid down by the court in its oral charge to the jury; but we do not so find. To the contrary, not only was the substance of this proposition not stated to the jury, but the court seemed to dwell upon its definition of negligence, simple negligence, and this, in addition to the general atmosphere of the case, in our judgment, rendered it both proper and needful and that the defendant should have the benefit of the charge in question.

[8, 9] Plaintiff traveled, as we have already noted, in a chair car with her husband and a small child. The entire journey through the state of Illinois was made at night. The train carried also several sleeping cars, a smoker, and a baggage car, but no other day coach. The sleeping cars had drawing rooms. Appellant requested several charges, stating, in substance, separately, that if the jury believed the evidence defendant was under no duty to move the crazy woman (1) into a sleeping car, or (2) into the smoker, or (3) into the baggage car. The refusal of each of these charges is assigned for error. We think it may be accepted as the law of this case that, while it was the duty of the defendant company to take every reasonable precaution to prevent annoyance or injury to other passengers by the crazy woman—and this would include the duty of providing another place

for her, if any such place were reasonably available on the train, or even putting her off the train at some place where she could be cared for, if that appeared to be necessary—still, defendant had no moral or legal right to shift the annoyance or prospective danger of such a presence from plaintiff and other passengers in the coach with her to others equally entitled to protection. By the allegations of the complaint plaintiff assumed the burden of proof in this matter, and our judgment is that she failed to show that, after notice of that conduct of the crazy woman of which plaintiff complained, and "with ample time and opportunity to take some action to prevent a continuation," defendant "wantonly failed, refused, or declined" to remove the woman to some other part of the train, though, possibly, it was open to the jury to infer that she might have been better restrained in the car where she was, or even that she might have been put off the train at a proper place. Upon the whole, the question of defendant's management of the crazy woman was one of judgment and discretion, and, if the judgment and discretion of its agent in charge of the train was exercised in good faith, defendant was not guilty as charged in the complaint.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and BROWN, JJ., concur.