(94 South. 302)

### HINES, Director General, v. MINIARD.
### (6 Div. 522.)

(Supreme Court of Alabama. May 11, 1922. Rehearing Denied Oct. 12, 1922.)

**1. Evidence 575—Rule for admission of evidence of witness at former trial stated.**

When evidence given at a former stage of the same action or on a former trial, where the parties and issues were substantially the same, and the witness was subject to cross-examination, or may have been so examined, by the party against whom the same is offered, and there is inability to produce the witness (on a subsequent proceeding by reason of his death, insanity, or other disability, or by his permanent absence from the jurisdiction) and his return is contingent, then the former evidence is admissible.

**2. Evidence 581—Predicate for admitting testimony at former trial held insufficient.**

Where plaintiff stated that witness at a former trial was in Indiana, and had been living there more than a year, this did not show that witness was permanently and indefinitely absent from the jurisdiction, so as to justify admission of his testimony.

**3. Carriers 314(4) — Pleading 208 — Count for being cursed and abused by another passenger held demurrable; demurrer to such count held not sufficient.**

A complaint charging that while plaintiff was a passenger on defendant's train a negro woman cursed and abused her, to her injury, and averred the injury was proximately caused by gross and wanton negligence of defendant's servants, acting within the scope of their duty as such, was subject to demurrer for failure to aver knowledge, but grounds of demurrer that no breach of duty was shown, and that the facts averred did not show a wanton wrong, are not specific and efficacious.

**4. Appeal and error 1213 — Affirmative charge held not required on second trial by reason of opinion on appeal.**

Where the pleadings on the second trial of an action by a passenger for abuse by a negro passenger charged the conductor and other employés with wanton negligence, while the former pleadings charged conductor only, and one less witness testified on the second trial than on the first trial, holding on former appeal *held* not to be law of the case requiring the giving of the affirmative charge.

**5. Evidence 43(2)—Judicial notice taken of records of former appeal in same case.**

On appeal the court may take judicial notice of their records on a former appeal of the case.

**6. Evidence 588—Conflict in statements on cross-examination does not warrant court in disregarding testimony.**

If there was a conflict in statements of a witness on cross-examination, it did not warrant the court in disregarding his testimony.

**7. Carriers 320(6)—Evidence as to failure of company's servant to report passenger's complaint to conductor sufficient for jury.**

In action by passenger for injuries caused by abusive manner, language, and immodest conduct of an insane negro passenger in the same car, evidence *held* to raise a jury question as to the duty to plaintiff of the porter to immediately report her complaint to the conductor.

**8. Trial 260(1)—Refusal of charge covered by charge given not error.**

The refusal of a charge may be justified by the fact that it was fully and fairly stated by a charge given.

**9. Carriers 236(1)—Obligation to transport insane persons stated.**

Where an insane person accompanied by an attendant offered herself as a passenger, and showed no evidence of doing violence, it is the carrier's duty to accept and carry her as a passenger, as long as she shows no evidence of becoming violent.

Anderson, C. J., and Gardner, J., dissenting in part.

Appeal from Circuit Court, Jefferson County; Romaine Boyd, Judge.

Action by Mary Miniard for damages against Walker D. Hines, as Director General of Railroads. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Count A of the complaint reads as follows:

"Plaintiff claims of defendant the sum of $2,000.99 for that during the month of April, 1919, defendant was engaged in the business of operating a railroad carrying passengers for hire, from the city of Chicago, Ill., to the city of Birmingham, Ala., and on said date plaintiff was a passenger on one of defendant's trains, and while plaintiff was such passenger a negro woman who was on said train cursed and abused plaintiff, and used in plaintiff's presence and hearing in said train foul and vulgar language, for a long time in the presence of men and women, and as a proximate result thereof plaintiff was greatly humiliated, frightened, chagrined, and made sick and nervous, and suffered pain and anguish. Plaintiff avers that said injury was proximately caused by the gross and wanton negligence of the defendant's servants, acting within the line and scope of their duty as such, in and about the carriage of the plaintiff as a passenger."

---

For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

The defendant requested, and the trial court refused, the following charges:

"A. If you believe the evidence the acts of Wakefield after plaintiff had complained to him cannot afford plaintiff a basis of recovery in this case.

"B. You cannot find for plaintiff on account of the acts of Conductor Wakefield after plaintiff had complained to him."

"6. If you believe from the evidence that this crazy negro woman, when offering herself as a passenger, was insane, and was accompanied by an attendant, and showed no evidence of doing violence, then it was defendant's duty to accept her as a passenger, and it was defendant's duty to carry her as a passenger as long as she showed no evidence of becoming violent."

Percy, Benners & Burr, of Birmingham, for appellant.

Count A does not state a cause of action. 183 Ala. 255, 62 South. 871; 183 Ala. 237, 62 South. 889. A railroad passenger under disability must not be ejected at an unsuitable place. 108 Ala. 62, 19 South. 51, 31 L. R. A. 372; 173 Ala. 611, 55 South. 894. Defendant had the right to have the jury instructed that he, and not some invisible corporation whose business he is to stand for, and pay such damages, is the real defendant in the case. 203 Ala. 486, 84 South. 266. A punitive verdict against the Director General cannot be sustained. 255 U. S. 298, 41 Sup. Ct. 261, 65 L. Ed. 647. The testimony of a witness at a former trial cannot be introduced, without a showing of an effort made to procure his attendance at the trial. 141 Ala. 517, 37 South. 702.

Black & Harris, of Birmingham, for appellee.

The complaint states a cause of action, and is good as against demurrers. 194 Ala. 211, 69 South. 614. A carrier is under no duty to accept any person as a passenger, or continue to transport him, if it can be reasonably anticipated or expected that such person would interfere with the reasonable comfort and convenience of other passengers. 4 Wall. 605, 18 L. Ed. 447; 57 Ind. 576, 26 Am. Rep. 68; 55 N. Y. 108, 14 Am. Rep. 190; 54 Fed. 116, 4 C. C. A. 221; 152 Ala. 101, 44 South 538, 126 Am. St. Rep. 17; 194 Ala. 211, 69 South. 615; 144 Ky. 649, 139 S. W. 856, 36 L. R. A. (N. S.) 337; 188 Ala. 449, 66 South. 22. The testimony of a witness at a former trial can be introduced, without showing an effort to secure his attendance, if it is shown that he is without the jurisdiction of the court and is residing in another state. 36 Ala. 636; 18 Ala. 801; 67 Ala. 64, 42 Am. Rep. 95; 92 Ala. 41, 9 South. 406. The Director General is liable for wanton negligence of his employees. 206 Ala. 591, 91 South. 575. Charges intended to explain, modify, or refute argument of counsel are properly refused. 173 Ala. 675, 55 South. 1001; 158 Ala. 421, 48 South. 85; 121 Ala. 39, 25 South. 701.

208 ALA.—12

When a trial court holds that a predicate is sufficient to justify the admission of evidence given on a former trial, every reasonable presumption must be indulged in favor of the ruling. 12 Ala. App. 265, 68 South. 500; 183 Ala. 61, 63 South. 71; 16 Ala. App. 408, 78 South. 324; 17 Ala. App. 651, 87 South. 698; 203 Ala. 509, 83 South. 330.

THOMAS, J. The first appeal, decided June 30, 1920, was on the issue of wanton misconduct of Conductor Wakefield after plaintiff had complained to that official to prevent a continuation of abuse and insult. Hines v. Miniard, 204 Ala. 514, 86 South. 23, 12 A. L. R. 238. The gravamen of count A, on which the second trial rested, was that the injury plaintiff suffered was proximately caused by the gross and wanton negligence of the defendant's servants, acting within the line and scope of their employment in and about the carriage of plaintiff as a passenger.

Defendant requested general affirmative charges and special charge C, that "this suit is not a suit against the Illinois Central Railroad Company and the Illinois Central Railroad Company has no interest in this suit," which were refused. A companion charge (5) given for defendant was: "You cannot give damages in this case for the purpose of punishing the Illinois Central Railroad Company."

The Illinois Central Railroad Company, originally made a defendant, was stricken on plaintiff's motion on February 10, 1921, after the discussion on the subject of proper parties to such actions (Crim v. L. & N., 206 Ala. 110, 89 South. 376, decided January 13, 1921; Canidate v. Western Union, 203 Ala. 675, 85 South. 10, decided January 15, 1920), and before the final decision in Charlton v. A. G. S., 206 Ala. 341, 89 South. 710. The railroad company, being erroneously made a party defendant, and stricken, thereafter had no interest in the suit against the Director General for an injury inflicted during the month of April, 1919. Pertinent statutes and orders are set out in Crim v. L. & N., supra, and given last consideration in Charlton v. A. G. S., supra; Currie v. L. & N., 206 Ala. 402, 90 South. 313, 19 A. L. R. 675; Mo. Pac. R. Co. v. Ault (June 1, 1921) 256 U. S. 554, 41 Sup. Ct. 593, 65 L. Ed. 1087; Norfolk-Southern v. Owens, 256 U. S. 565, 41 Sup. Ct. 597, 65 L. Ed. 1093.

It must be conceded that at the time of the second trial the final responsibility as to proper defendants to such action—whether the government alone or in conjunction with the corporation whose transportation properties were being operated by the government—was a matter of uncertainty.

The bill of exceptions discloses that there was a difference of opinion at the time of the trial as to the final responsibility of defendants in such actions, which was evidenced

by the respective arguments of counsel to the jury on the question. The cogent reasons on which was rested the decision in Standridge v. Martin, 203 Ala. 486, 84 South. 266, have application to the refusal of charge C. The giving of charge 5 for defendant left the imputation, under the argument of counsel, of the uncertainty or extent of liability that the jury may award as damages, as may affect the Illinois Central Railroad Company. The Director General was trying to have the jury instructed that the government alone was responsible for compensation for damages, and not "some invisible corporation whose business it is to stand for and to pay damages" as may be awarded by the jury. It will be observed that the trial (February 10, 1921) was before rendition of the decision of the Supreme Court of the United States on June 1, 1921, in Missouri Pacific R. Co. v. Ault, supra.

[1, 2] The stenographic report of the testimony of R. H. Miniard was read to the jury against due objections and exceptions. In attempting to lay a predicate to justify secondary evidence, plaintiff was asked of the whereabouts of Mr. Miniard at the time of the second trial:

"Q. Where is he living now?
"Counsel: We object to that.
"A. Gary, Ind."

Objection by defendant being sustained by the court, plaintiff asked the witness:

"Q. Where is he now? A. He is in Gary, Ind. Q. How long has he been living there? A. He has been there a little more than a year now."

Thereupon the court explained to the jury that the testimony was admitted on the ground that the witness was out of the jurisdiction, and his testimony having been taken on a former trial of this case, with the right of cross-examination, made the same admissible "in so far as the questions and answers are competent." The effect of the decisions is that, when evidence given at a former stage of the same action or on a former trial, where the parties and issues were substantially the same, and the witness was subject to cross-examination, or may have been so examined, by the party against whom the same is offered, and there is inability to produce the witness (on a subsequent proceeding by reason of his death, insanity, or such other disability, or by his permanent or indefinite absence from the jurisdiction of the court), and his return is contingent, uncertain, or conjectural, then the former evidence is admissible. Long v. Davis, 18 Ala. 801; Yarbrough Turp. Co. v. Taylor, 201 Ala. 434, 78 South. 812; Duncan v. Watson, 198 Ala. 180, 184, 73 South. 448; Ala. Consolidated C. & I. Co. v. Heald, 171 Ala. 263, 270, 55 South. 181; 1 Greenl. Ev. §§ 163, 166; 1 Whart. Ev. §§ 177, 180; 2 Jones, Ev. §§ 336, 343; Hughes, Ev. p. 57 et seq.; Mayor, etc., v. Day, 3 Taunton's Eng. Com. Pl. Rep. 262, Mansfield, C. J.

In the application of the exception to the general rule requiring best evidence to be offered of permanent or indefinite absence from the jurisdiction of the court difficulty is encountered. The earlier decisions declared for a more liberal application of the exception to the rule in making out a prima facie case of indefinite or uncertain absence from the jurisdiction than is given expression in the later cases. In Long v. Davis, supra, witness "had gone to Tennessee"; in Mims v. Sturdevant, 36 Ala. 636, had "removed to Texas"; without other showing this was treated, prima facie, a permanent absence; Harris v. State, 73 Ala. 495, 497, subpœna had issued for witness, and returned "not found," and, her absence from the state not being shown, her deposition before committing magistrate was inadmissible; and Pruitt v. State, 92 Ala. 41, 9 South. 406, the witness "left Leighton about two months" before the trial, went "to the state of Arkansas," and was "still absent from the state," held evidence prima facie admissible. In Perry v. State, 87 Ala. 30, 6 South. 425, the witness "was out of the state, beyond the jurisdiction of the court," and she stated to the magistrate that "she was going to leave, for fear the defendant would charge her" with homicide; her testimony as detailed by the magistrate was competent. So in Lowe v. State, 86 Ala. 47, 52, 5 South. 435, 436, where the witness "was out of the state, having gone to Washington Territory," and stated theretofore that he never intended to return; and in South v. State, 86 Ala. 617, 6 South. 52, the witness' permanent absence from the state was shown. In the case of Matthews v. State, 96 Ala. 62, 11 South. 203, the witness residing out of the state at the time of the trial having removed from the state permanently or indefinitely, secondary evidence was admitted to prove what he had deposed on preliminary investigation. The predicates for secondary evidence were held insufficient, Lucas v. State, 96 Ala. 51, 11 South. 216, where the residence of the absent witness was not shown at the time of trial; he was seen several months before at work in Atlanta, Ga., and also had been seen at work in Birmingham, Ala.; and Thompson v. State, 106 Ala. 67, 17 South. 512, where the witness was a minor who had gone from his father's home in Alabama to Florida for a temporary absence; no summons had issued for him, and he had stated in Florida a short time before the trial that he had a job of work there, and intended to remain. Predicates held sufficient were where the permanent residences and places of business of the absent witnesses were shown to be in another state, and that diligent and fruit-

less search had been made for the witnesses in this state. Burton v. State, 107 Ala. 68, 18 South. 240; Mitchell v. State, 114 Ala. 1, 22 South. 71; Burton v. State, 115 Ala. 1, 22 South. 585. Where the absent witness declared at the time of the preliminary trial that he resided in Pensacola, and a short time before the second trial was seen at his residence there, and the sheriff with process could not find him, in the county, was sufficient. Lett v. State, 124 Ala. 64, 27 South. 256. In Percy v. State, 125 Ala. 52, 27 South. 844, two predicates were sought to be laid: Absent witness Forsythe, a soldier, whose permanent residence was Massachusetts, and temporarily located as a soldier at Huntsville, and removed therefrom with his company, was not found by the sheriff with subpœna; held prima facie sufficient. Not so as to the witness Ed White, not an enlisted man (whose residence was not shown), and who drove a team for the company of the army that had been removed from Huntsville. In Jacobi v. State, 133 Ala. 1, 32 South. 158 (Jacobi v. Alabama, 187 U. S. 133, 23 Sup. Ct. 48, 47 L. Ed. 106), the residence of the witness was in Georgia, and before removing from Alabama she declared that she would not return for second trial. This, with the failure of the sheriff with process to find her within the jurisdiction of the court, held admissible. And in Wilson v. State, 140 Ala. 43, 46, 51, 37 South. 93, witness' permanent residence was in Tennessee, and there was failure on the part of the sheriff with process to find him in the jurisdiction of the court. Held sufficient to show indefinite absence from the state. In Southern Ry. v. Bonner, 141 Ala. 517, 526, 37 South. 702, 705, the predicate declared sufficient was:

"The evidence constituting the predicate for proof of what Everly had testified was the testimony of a witness wherein he said with reference to Everly, 'I don't know exactly where he lives, I saw him about three or four months ago at Cullman, and asked what he was doing and he said he was switching on, some line in Texas; I know he is living in Texas,' and this statement on cross-examination, 'I know he is living in Texas because he told me then he was living in Texas.' This, with nothing else to show Everly's whereabouts and nothing to show a search for or an effort to procure his attendance at court, falls short of fulfilling the measure of proof required to lay the predicate."

In Morris v. State, 146 Ala. 66, 92, 41 South. 274, it was shown that the absent witness (not subpœnaed) was a permanent resident of the state of Tennessee; and in Woodstock Iron Works v. Kline, 149 Ala. 391, 399, 43 South. 362, witness' subpœna was returned after diligent search and inquiry not found. and it further appeared that the witness had left the county for his home in the state of Tennessee. Predicate held sufficient.

The predicate for witness Miniard did not show that the witness was permanently or indefinitely absent from that jurisdiction. Justices McCLELLAN, SAYRE, SOMERVILLE, and MILLER concur in the opinion of the writer that the predicate was insufficient. Chief Justice ANDERSON and Justice GARDNER are of opinion that plaintiff's predicate was sufficient to admit the testimony of said Miniard given on the former trial.

[3] The second trial was had on count A. Observation will show that the count did not undertake to aver the quo modo of the gross and wanton conduct or negligence of defendant's servants as to protecting plaintiff as a passenger. Demurrer challenged the count on grounds that no breach of duty was shown, and that the facts averred did not show a willful or wanton wrong. This count was drawn in conformity with count 1, the subject of consideration in Seaboard Air Line v. Mobley, 194 Ala. 230, 231, 69 South. 614, where the observation was made that general grounds of demurrer were not sufficient to point out· the fact that said count failed to allege that defendant, or its servants, knew, or that the attending circumstances were such that the defendant or its servants should have known, of the danger that threatened plaintiff in time to prevent it. The statement was further made of such count in Mobley's Case that "aside from this, the count is sufficient under the measure of duty of a common carrier as declared" in Southern Ry. v. Lee, 167 Ala. 268, 272, 52 South. 648.

Is the latter expression in Mobley's Case in harmony with other decisions of this court? For a better understanding of Mobley's Case and that of Tomme v. Pullman Co. (Ala. Sup.) 93 South. 462,[1] it is necessary to observe that the gravamen of the respective counts on which these trials were had is that "plaintiff avers that said injuries were proximately caused by the negligence of defendant's servants or agents in or about the carriage of the plaintiff while a passenger of defendant"; and, in the latter, "plaintiff avers that said injuries were proximately caused by the negligence of defendants, their agents or servants while acting within the line and scope of their employment in and about the carriage and accommodation of plaintiff as a passenger aforesaid." In each case the grounds of demurrer were not specific, .and were of the class as directed against count A.

Counts for simple negligence were the subject of consideration in the depot cases of Southern Railway Co. v. Hanby, 183 Ala. 255, 262, 264, 62 South. 871, and N. C. & St. L. Ry. v. Crosby, 183 Ala. 237, 62 South. 889, and are cited as authority that the instant count fails to state a cause of action. Count 3 in the Hanby Case set up the quo modo of the injury inflicted on plaintiff before board-

[1] 207 Ala. 511.

ing the train, by a stranger at the depot, and concluded with the averment that all of which said wrongs and injuries were known to defendant Southern Railway Company, and to its agent, Lewis Malone, "or would have been known by it by the exercise of reasonable care and diligence." The defects pointed out by demurrer that was sustained were classified as follows: (1) The averments were such as to show that plaintiff had no wrongs and injuries until after he was set upon and beaten; (2) the alternative averment, "or would have been known by it by the exercise of reasonable care and diligence," is supported by no allegation of the complaint that, prior to the assault, anything had occurred to bring home to the railway company, or its station agent, Malone, knowledge that an assault upon the appellee was probably in the contemplation of any person whatsoever; and there is no allegation that the knowledge of the railway company as to the threatened injury was obtained "in time for it, by the exercise of due diligence, to have prevented the injury so threatened." In the Crosby Case the defects pointed out in the second and fifth counts (averring that defendant negligently allowed or permitted a stranger to beat and assault or search plaintiff) were that a state of facts upon which the duty of protection or intervention would arise was not alleged, "viz. a knowledge by defendant of the intended wrong, or reasonable grounds to anticipate it, in time to prevent or interfere with its execution." Without demurrer, in Southern Ry. Co. v. Lee, supra, the trial was upon a count alleging that plaintiff as a passenger was injured by insult or indignity offered by a third person, and that the servants or agents of the defendant failed to use ordinary diligence to preserve order among certain male passengers who were then and there engaged in disorderly conduct on said train, but, to the contrary, did negligently allow or permit said male passengers to engage in disorderly conduct, to use obscene, indecent, threatening, profane, and insulting language in the presence and hearing of plaintiff, and in close proximity to her; that said conduct was known by said agents, or by the use of proper care could have been ascertained and prevented.

The count in Mobley's Case was for simple negligence as follows:

"Plaintiff claims of the defendant, a body corporate doing business as a common carrier of passengers for hire in Jefferson county, state of Alabama, $30,000 damages, for that, on to wit, December 23, 1913, plaintiff, who was a passenger of the defendant, was injured, while being transported as such passenger by the defendant between Birmingham, Ala., and Atlanta, Ga., as follows: (Here setting out the injuries.) Plaintiff avers said injuries were proximately caused by the negligence of the defendant's servants or agents in and about the carriage of the plaintiff as a passenger of the defendant."

And the expression, "the count is sufficient under the measure of duty of a common carrier," is not in harmony with the requirements of such count for simple negligence. That is, the averment of knowledge on the part of defendant or its agents, acting within the line and scope of their employment at the time of the injury, or that the attending circumstances were such that defendant or its said agents, by the exercise of due care, should have known of the threatened insult to plaintiff in time to have interposed preventive measures, is required. Southern Ry. Co. v. Hanby, supra; N. C. & St. L. v. Crosby, supra; Tomme v. Pullman Co., supra. The foregoing cases are in accord that a general demurrer is not sufficient to challenge a count for such a defect as we are now considering. All the justices agree that the analogy found in Southern Ry. Co. v. Hanby, supra, and N. C. & St. L. v. Crosby, supra, and the reason on which these rulings rest, require the averment of facts showing the duty to prevent an injury to, or protect the passenger therefrom, by averring knowledge on the part of the defendant or its agents acting within the line and scope of the employment at the time of the injury in a wanton count, declaring for an injury suffered or inflicted from such independent source, agency, or third persons. The justices are agreed that count A was subject to demurrer for such failure of averment of knowledge, but that the grounds of demurrer assigned were not specific and efficacious.

Since the general affirmative charge requested by defendant was refused, we must ascertain whether the evidence was sufficient to sustain an action for wantonness. Hines v. Miniard, 204 Ala. 514, 86 South. 23, 12 A. L. R. 238.

[4] On former appeal the complaint was specifically limited to the acts of Conductor Wakefield, who was in charge of the train during the latter part of the journey, and who, if he had knowledge or notice, was responsible for the situation complained of for only a part of the journey traversed by the two passengers whose respective conduct and injury are the subject of inquiry. That the same situation may be presented as to Conductor Wakefield on this trial, charges A and B were requested and refused. Obviously, if on last appeal plaintiff's charge of wantonness (as against the acts or failure of duty of said conductor) was not made a jury question, and if the facts on second trial were not substantially different from those given on first trial, charges A and B should have been given under the authorities cited in former opinion, and the court's failure to give the same would constitute prejudicial error.

[5] We take judicial notice of our records

on first appeal in this case. N. C. & St. L. v. Crosby, supra; Terrell v. Nelson, 199 Ala. 436, 441, 74 South. 929; Julian v. Woolbert, 202 Ala. 530, 81 South. 32. It is sufficient to say that the exact facts are not presented in the failure of Albert Lewis to testify. The present count is broader than the former count on which trial was had, in that it includes other of the servants of defendant who are averred to have wantonly failed in their duty to plaintiff under circumstances where a high degree of care was required. Seaboard Air Line Co. v. Mobley, supra, 194 Ala. 214, 225, 226, 69 South. 614.

Plaintiff's evidence tended to show that she and the insane woman became passengers at 8 o'clock at night (when Mr. Springer was the conductor), and continued as passengers in the same coach until four or' five o'clock of the next morning, when the insane woman was taken off; that the offensive conduct (affecting plaintiff) on the part of the non compos extended, from time to time, throughout the whole course of the trip; that' a portion of the time the conductor and porter were each in the car and observed, or by the exercise of due care could have observed, the offensive conduct, and prevented injury to plaintiff; that during the charge of the car by Conductor Wakefield plaintiff made complaint to the porter, who Wakefield admitted was Albert Lewis (in attendance on the trial), who transmitted the complaint to him. As to the cause of the complaint and response thereto by that conductor, plaintiff's version was that (after recounting the offensive acts or conduct of the insane woman) the latter jumped over the seat. and just as she got by the seat where plaintiff's baby was the husband got between her and the baby, and the woman ran to the back 'of the coach and addressed plaintiff, cursing her; that this was some three hours before the woman got off the car; that plaintiff "sent the porter for the conductor * * * about three hours before the train" reached Cairo Junction; plaintiff "told the porter that I [she] wanted to see the conductor to have him do something with 'that negro woman, so he went back, and it was about an hour before the conductor came," and expressed regrets, "and said he would get her out of the coach when they passed at Cairo Junction; it was the Mason and Dixon Line, and he had to get her out. Otherwise he did not do anything."

After a colloquy between counsel and the court, the plaintiff as a witness was asked, "Did any conductor or employé or porter do anything to quiet the woman, or to protect you from her in any way whatsoever from the time she got on the train at 8 o'clock at night until 4 or 5 o'clock in the morning when" the insane woman got off? and answered. "Not a thing; no." The plaintiff's evidence was corroborated by that of her husband, whose evidence was admitted on the predicate we have indicated.

The defendant's evidence, by Conductor Springer, was that he had charge of the train from' Chicago to Centralia, where he turned the train over to Conductor Wakefield; that the crazy woman and her attendants got on at Effingham; that "about 20 miles out of Effingham she climbed, up in a seat and got hold of these hat racks and started to sing; I did not hear her cursing;" that Mrs. Miniard made no complaint to him; that he did not sit back in · the day coach where the two women were, and did not laugh and talk with anybody.

[6] If there was a conflict in the statements of a witness on cross-examination, this did not warrant the court in disregarding the testimony of such witness. Jones v. Bell, 201 Ala. 336, 77 South. 998; McMillan v. Aiken, 205 Ala. 35, 88 South. 135; Thomas Fur. Co. v. Carroll, 204 Ala. 263, 266, 85 South. 455; S. S. S. & I. Co. v. Underwood, 204 Ala. 286, 85 South. 441. On cross-examination the witness said that when he first went through the car to take up tickets "the negro woman jumped up" and "might have * * * run to the door;" that "she was using some kind of language," and witness "heard her cursing in my car where· this lady was; once was all that I heard her curse. She was not cursing anybody in particular; she was not cursing so very loud, just [in] an ordinary tone, at the time she was standing up in her seat;" that she "was hanging onto the hat rack singing;" that witness heard her "sing and curse while she was standing on the seat," and heard her curse in the presence of plaintiff one time only; that when witness came through the car a second time she was singing and standing on the seat; that she was singing rather loud, and "used bad language in singing just the one time." Witness further testified that when Mr. Wakefield, the other conductor, took charge of the train, witness told him' there was a crazy woman in the car; that witness could not remember telling him that the crazy woman was abusive, and that he had better be careful with her.

Conductor Wakefield, being sworn as a witness, testified that when he took charge of the train at Centralia he saw the crazy woman thereon; that the former conductor (Springer) had notified' him that she was on the train; that during the night Mrs. Miniard "did send for me (him) to come back," and "when I got the word we were within 20 miles of Cairo Junction;" that witness went where the lady was, who inquired how long it would be before the negroes would be taken out of the car, and he replied, "It will be at Cairo Junction"; that she said, "I will be very glad; I am' scared of negroes"; and witness assured her that he was "very sorry, but the law required them to ride in this car in this state." He further testified that he did not "sit down in the day coach where the crazy negro was and talk and laugh with

anybody" there; that there were five or six towns between Effingham and Centralia, and one stop between Cairo and Centralia at Carbondale, a town of 5,000 or 6,000 population. and a hotel; and there were about eight towns between Carbondale and Centralia, and one with a population of 6,000 people, and a hotel. Witness located the point at which he received the complaint of plaintiff through the porter, Albert Lewis, immediately after leaving Carbondale; stated that it was the duty of the porter to report to the conductor any disturbance in the cars or any loud or abusive language going on among men and women; that said Lewis had been a porter four or five days. Lewis did not testify as a witness, but was in attendance upon the court, or, rather, that is the undisputed inference from the testimony of Wakefield, who said "his name is Albert Lewis. He is outside."

[7] The testimony fails to show that, immediately on complaint of abusive language, or knowledge or notice thereof, the porter, Albert Lewis, reported the same to the conductor. The extent of Wakefield's testimony was that, when the porter communicated to him Mrs. Miniard's complaint, he went to her immediately, or, as soon as consistent with his other duties as conductor, expressed his regrets, and explained when the woman would be removed from the car. It is undisputed that an hour or more intervened between the time of Mrs. Miniard's complaint to the porter and the response thereto by Conductor Wakefield. This made a jury question as to the duty to plaintiff of the porter to immediately report her complaint to the conductor, whether Springer or Wakefield, and sufficient evidence to justify the refusal of the affirmative charge at defendant's request. This is aside from the tendency of evidence that one of the conductors and the porter, Albert Lewis, had been in the car a short distance from plaintiff and insane woman for "a while, * * * an hour or more," during which time the latter indulged in abusive or offensive language in the presence of plaintiff. The testimony was such that on this point there was direct conflict of evidence. McMillan v. Aiken, supra. The jury may reasonably infer that the conductor thus referred to was Springer, and it is without dispute that the porter (Albert Lewis) to whom complaint was made reported to Wakefield, who responded to the request. Whether this report was made promptly or with wanton delay was also a jury question.

[8] The refusal of charge 9, requested by defendant, may be justified by the fact that it was fully and fairly stated by the court in its charge to the jury. The court said in oral charge:

"In other words, while they have the right, and it may be their duty, under such circumstances, to eject violent and abusive passengers, the law says they must put them off at a suitable place. * * * They could not put them off out in the woods, on the one hand, but at such place where with reasonable regard to the condition and circumstances * * * would be reasonably safe to eject them."

And the trial judge, reading to the jury from a former opinion in this case, said:

"If it be found necessary to the reasonable safety and comfort of other passengers, such passenger may be removed from the train at the first station where he may be properly cared for."

Moreover, the charge assumes that there were certain towns at which the conductor could not stop the train after the complaint was made, or until the train reached Cairo Junction.

[9] Refused charge 6 should have been given.

The judgment is reversed, and the cause is remanded.

Reversed and remanded.

All the Justices concur.

GARDNER, J., rests concurrence in result of reversal upon refusal of charge 6.