The defendant, Brigadier Homes, Inc. ("Brigadier"), manufacturer of a mobile home, appeals a judgment entered on a jury verdict against it for $30,000. We affirm.
The issues are whether there was sufficient evidence preented as to the defects in the mobile home to sustain the jury's verdict; and whether the trial court committed reversible error when it instructed the jury on terms contained in the Magnuson-Moss Act, 15 U.S.C. § 2301 et seq.
The plaintiff, William Thompson, bought a mobile home from Circle South Mobile Homes ("Circle South") in Dothan. The mobile home was manufactured by Brigadier. The purchase price of the mobile home was $36,795. Thompson made a down payment of $6,795 and financed the remaining $30,000. The mobile home came with Brigadier's one-year warranty for defects in material and workmanship. Circle South delivered the home to Auburn, Alabama, and set it up for Thompson to move into it. The home had numerous, serious defects that were noticeable upon delivery. Thompson contacted Circle South and reported these problems. Circle South reported some of the problems to Brigadier. Both Circle South and Brigadier failed to satisfy Thompson in regard to the problems. Thompson then sued Circle South and Brigadier for rescission of the contract; fraud; breach of warranties; violation of the Magnuson-Moss Warranty Act; and claiming status as a third-party beneficiary of a contract between Circle South and Brigadier. The trial court allowed the case to be tried to the jury on the following counts: as to Circle South, breach of contract and negligence; as to Brigadier, breach of express and implied warranties. The jury returned a general verdict against Circle South for $2,500 and against Brigadier for $30,000. Brigadier appeals from a judgment based on that verdict.
 I. SUFFICIENCY OF THE EVIDENCE
Brigadier argues that by returning a verdict for $30,000, the jury was concluding that the value of the mobile home had decreased by over 80%. Brigadier contends that Thompson's evidence was insufficient to establish $30,000 in damages. We disagree. Thompson testified that the trailer was improperly assembled when it arrived at his lot; that the crown molding was not in place; that the door facing moldings were not installed; that the wallpaper and panelling were improperly trimmed; that the carpet was not tacked down tightly; that the garden window was not installed when the home was delivered and after it was subsequently installed, the roof of the mobile home began to dip in several places; that the end pieces that secure the vinyl siding were not installed; that the vents were not installed; *Page 1033 
that the washing machine and the dishwasher did not function properly; that the whirlpool tub in the bedroom leaked; that the electrical outlets in the living room, dining room, and one of the bedrooms did not work; that the electric power would turn on and off intermittently, leaving the smell of burning wires in the mobile home; that the use of an iron or the electric stove would cause a circuit breaker to cut off the current; that the roof shingles stood at an unusual angle and never lay down properly; that the fireplace was cracked; that water began leaking from the ceiling into the living room, a bathroom, and a bedroom, causing those ceilings to darken; and that a wall in the front bedroom mildewed. When someone has purchased a mobile home and lived in it, he or she is qualified to testify to its value. Mobile Home Brokers, Inc. v. Clark,346 So.2d 1156, 1159 (Ala.Civ.App. 1977). "Any lack of familiarity with the mobile home industry relates to the probative value of the testimony rather than its admissability." Id. Thompson provided a lengthy list of what he perceived to be serious defects in the mobile home.
In addition, Thompson's expert at trial, Emery McKinney, testified that the mobile home had a significant number of defects and examples of poor workmanship. The more serious defects that he testified to were as follows: when he was within 300 to 400 feet of the mobile home, he could see bulges in the siding; the ceilings bulged in several places throughout the home; the pipes under the kitchen sink had not been sealed properly to prevent bugs and vermin from entering the home; the dishwasher had been improperly installed so that unfinished wood was protruding from around the dishwasher; the kitchen counter was badly warped as a result of a failure to laminate the particle board out of which the counter was constructed; the home had been improperly ventilated, thereby causing the windowsills to buckle; the dining room walls had numerous nail holes, as did the shower enclosure; there was no evidence of any attic ventilation; and the roof was improperly constructed.
Unless the jury's award of damages is "so excessive, or so grossly inadequate, as to be indicative of prejudice, passion, partiality, or corruption," we will not disturb that award.Alabama Great Southern Ry. v. Baum, 249 Ala. 442, 449,31 So.2d 366 (1947). We disagree with the defendant's contention that the jury's assessment was motivated by these factors. From the evidence presented, the jury could have reasonably concluded that the value of the mobile home had decreased by over 80%. Therefore, we will not substitute our judgment for that of the jury.
 II. INSTRUCTION TO THE JURY
Plaintiff's requested jury charge number 16 was submitted as follows:
 "There are certain terms that are used in The Magnusson/Moss Act which will now be explained to you.
 "The term 'supplier' means any person engaged in the business of making a consumer product directly or indirectly available to consumers.
 "The term 'warrantor' means any supplier or other person who gives, or offers to give, a written warranty, or who is or may be obligated under an implied warranty.
"The term 'written warranty' means:
 "(1) Any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer, which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect-free or will meet a specified level of performance over a specified period of time, or,
 "(2) Any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking, which written affirmation, promise or undertaking becomes part of the basis of the bargain between a supplier and a buyer for the purposes other than resale of such product. *Page 1034 
 "The term 'implied warranty' means an implied warranty arising under state law (as modified by other sections of this Act), in connection with the sale by a supplier of a consumer product.
 "The term 'remedy' means whichever of the following actions the warrantor elects:
"(1) Repair;
"(2) Replacement; or
"(3) Refund
 except that the warrantor may not elect refund unless (i) the warrantor is unable to provide replacement and repair is not commercially practical, or cannot be timely made, or (ii) the consumer is willing to accept such refund.
 "The term 'replacement' means furnishing a new consumer product which is identical or reasonably equivalent to the warranted consumer product.
 "The term 'refund' means refunding the actual purchase price (less reasonable depreciation based on actual use where permitted by the rules of the commission)."
After the trial judge read the requested charges, counsel for the defendant made the following objection regarding request number 16:
 "Judge, the only objection I have is to giving number sixteen for the plaintiff.
 "I think it can be misleading to the jury, because they could believe that they could refund the plaintiff's purchase price in this case, which, of course, that is not the measure of damages in this case."
If a jury charge is a correct statement of law, as applied to the facts of the case in question, the remedy for the party opposing the instruction is an explanatory charge. UnitedInsurance Co. of America v. Ray, 275 Ala. 411, 416,155 So.2d 514 (1963). The definition of the terms in request number 16 are taken verbatim from 15 U.S.C. § 2301 subsections (4) through (12). Section 2301 is the definitional section of the Magnuson-Moss Act. Because the Magnuson-Moss Act applies to the facts of this case and because the instruction as requested by the plaintiff was a correct statement of the law, we hold that the defendant's remedy, if he believed the instruction confused the jury, was to request a clarifying instruction. Ray, supra.
The defendant did not request a clarifying instruction. Therefore, we hold that the trial court did not commit reversible error by giving plaintiff's requested instruction number 16.
The judgment is affirmed.
AFFIRMED.
HORNSBY, C.J., and JONES, SHORES and HOUSTON, JJ., concur.